STATE OF IOWA, Appellee, v. A. L. STEVENS, AND W. H. MOTT, Appellants.

Intoxicating Liquor:  · MAINTAINING A NUISANCE:  INSTRUCTION.  On 1 a prosecution for maintaining a liquor nuisance an instruction that "if defendants kept or used the cellar in question, and beer was found therein, the law would presume it was kept there unlawfully, but this presumption might be overcome by evidence showing that defendants did not keep the beer in the cellar unlawfully," is in substantial harmony with Code section 2427, and. does not assume that the beer was in the possession of defendants if the cellar was not used by them.

Presumption From Possession.  Possession of intoxicating liquor 2 is presumed unlawful in the absence of a satisfactory showing to the contrary.

Same.  The fact that beer found in the possession of defendants 3 is the property of a third person is not a defense to a prosecution for maint .ining a nuisance, if so kept for an unlawful purpose.

Evidence:  CIRCUMSTANTIAL:  INSTRUCTION.  On a prosecution for 4 maintaining a liquor nuisance, the evidence is discussed and held not circumstantial, and to require no special instruction on circumstantial evidence.

*Appeal from    Cerro    Gordo    District· Court.*—HON.  J.  F CLYDE, Judge.

WEDNESDAY, APRIL 8, 1903.

THE indictment charged the defendants jointly with maintaining a liquor nuisance, in that they had established and were keeping, using, and maintaining a building and place in Cerro Gordo county for the purpose and with the intention of selling, and in keeping and selling therein, intoxicating liquors, contrary to law. There was a trial to a jury, and a verdict of guilty. Judgment was entered imposing a fine as against each defendant, and for costs. The defendants appeal.—*Affirmed.*

*Blythe, Markley & Rule,* for appellants.

*C. W. Mullan,* Attorney General and *Chas. A. Van Vleck,* Assistant Attorney General, for the State.

BISHOP, C. J.—The defendants were the proprietors of a restaurant in the town of Clear Lake, in Cerro Gordo county. Sunday morning, August 17, 1901, a deputy sheriff, armed with a search warrant, entered the premises occupied by defendants, and made a search for intoxicating liquors. In a cellar or basement underneath the restaurant he found a large quantity of bottled beer. The indictment in this case followed.

Upon the trial in the court below the court, upon its own motion, gave to the jury an instruction as follows: "(9) The state claims that the defendants kept or used

1. MAINTAIN-
ING nuisance:
instruction.
the basement or cellar under their restaurant, and kept beer therein for unlawful purposes. On this issue the burden of proof is upon the state, and, in order to convict defendants on account of what was kept or done in said basement or cellar, you must find from the evidence and beyond reasonable doubt that the defendants kept and used the cellar in question, and that intoxicating liquor was kept therein for the purpose of selling unlawfully. If defendants kept or used the cellar in question, and beer was found therein, the law

would presume it was kept there unlawfully; but this presumption might be overcome by evidence showing that the defendants did not keep the beer in the cellar unlawfully. If the defendants did not keep or use the cellar in question, and had no control of it, they would not be responsible for what was kept or done in the cellar; but, if they kept or used the cellar, they would have no right to permit any other person to keep beer therein for unlawful purposes." This instruction is attacked as erroneous, it being pointed out, first, that it assumes that the beer was in the possession of defendants if the basement was used by them; second, that it is therein said that finding the beer in the basement used by defendants raised a presumption that it was kept there unlawfully, and such presumption could only be overcome by proof that they did not keep it there unlawfully; third, that it assumes that defendants might be convicted if they "permitted another to keep beer therein for unlawful purposes"; fourth, that thereby the jury was told that the defendants would be guilty if they "kept or used the cellar and intoxicating liquor was kept therein for unlawful sale, without regard to defendants' knowledge that such liquors were kept there for illegal sale."

No one of these grounds of contention is well taken. By section 2427 of the Code it is provided that "the finding of intoxicating liquors in the possession of one not legally authorized to sell shall be presumptive evidence that such liquors * * * are kept for illegal sale." The instruction is not in any substantial sense out of harmony with the rule of the statute. If the cellar was in the possession of defendants, it follows as a necesssary corollary that they were in possession of its contents. No refinement of reasoning can lead to any other conclusion. The instruction is not open to criticism because of the expression, "was used by them." As applied to the undisputed facts in the case, such expression was equivalent to "was in

their possession," and could not have been misunderstood by the jury. It appears from the testimony of all the witnesses, the defendants included, that the only means of access to the cellar was through a trapdoor in the floor of the restaurant, situated behind one of the counters. True, there was an outside door to such cellar, but it was fastened and barricaded from the inside. The instruction given had application to such a state of facts.

The next ground of contention is fully answered by a reference to the provisions of the statute quoted above. It was not even-pretended that defendants were legally authorized to sell. · If, therefore, they were in possession 2. PRESUMPTION of the liquors, such possession must be pre-from possession. sumed to be unlawful, in the absence of a satisfactory showing to the contrary. *State v. Shank*, 74 Iowa, 649; *State v. Illsley*, 81 Iowa, 49.

The third ground of contention is equally without merit. Chapter 6, title 12, of the Code, prohibits in general the sale, or keeping for sale, of intoxicating liquor, except under certain prescribed conditions. By 3. SAME. section 2382—a part of said chapter—it is provided that "no one  *  *  * shall, for himself or any person else, directly or indirectly, or upon any pretense, or by any devise,  *  *  * own, keep, or be in any way concerned, engaged or employed in owning or keeping any intoxicating liquor with intent to violate any provision of this chapter, or authorize or permit the same to be done." Section 2384 provides that "whoever shall erect, establish, continue or use any building or place for any of the purposes herein prohibited, is guilty of a nuisance." It is contended by defendants that the beer found in the cellar was in fact owned by one Allport. Conceding this to be true, still, if the same was in possession of defendants, and was there for unlawful sale, they cannot escape conviction.

It is a sufficient answer to the last ground of contention to say that by no canon of construction can the

instruction in question be made to convey the meaning sought to be attached to it by appellants.

II.    It is contended by counsel for defendants that the evidence upon which the state relied for a conviction was wholly circumstantial, and that, therefore, the court erred in refusing a request for an instruction relating to that subject.    The court below did not so regard the evidence presented by the state nor do we.    The defendants admitted their possession of the restaurant.    There was no available entrance to the cellar except through the restaurant.    The beer was in the cellar—part of it in a tub of ice water, part of it in gunny sacks on the floor, and part of it secreted in a large box sunk into the ground, and covered with dirt.    Moreover, it appears that when the officer, armed with the search warrant, entered the cellar, he found Stevens down there, who demanded a reading of the warrant, and who, in his effort to conceal a shovel, gave to the officer a clue to the sunken box.    On the cases holding the bottles found in the sunken box were labels showing that the same had been consigned to the defendant Mott.    Such was the character of the evidence, and we do not think it can be classed as circumstantial.    If, perchance, a thread of evidence purely circumstantial can be found running through, it was too minute to be taken note of and dignified by a special instruction upon the subject.

We have examined all other requests for instructions and we think that, as far as they correctly state propositions of law, they were embodied in the instructions given to the jury.

III.    Complaint is made of misconduct on the part of two of the jurors, occurring after the jury had retired to deliberate.    This is sought to be established by the affidavits and testimony of some members of the jury who tried the case.    Even if the affidavits of the jurors could be received for the purpose of impeaching their verdict—

*4. EVIDENCE: circumstantial: instruction.*

a point we do not admit—still it cannot be said that any improper conduct is shown. Without setting forth in detail the matters alleged, we think it sufficient to state the conclusion thus reached from our readng of the record.

We conclude that there was no error, that the defendants were properly convicted, and the judgment is AFFIRMED.