GEORGE LEWIS v. HUGH BRENNAN, Judge, Defendant.

**Intoxicating liquors:** NUISANCE: ABATEMENT: CLOSING OF PREMISES.
1 Upon the establishment of a liquor nuisance either in a civil or criminal case the order of abatement to be entered under the statute as a part of the judgment requires the effectual closing of the building for any purpose for the period of one year: there is no authority for decreeing that the building shall be closed so far as the sale of liquor is concerned, and at the same time used for

other lawful purposes, unless released by giving bond as provided in the Code.

**Same:** *Certiorari*: FAILURE TO RETURN RECORD: REVIEW. Upon *certiorari* to review contempt proceedings in which defendant was not found guilty of violating an order restraining the illegal sale of liquor, where no transcript of the record upon which the findings were based was returned and no affirmative finding upon which the inference of guilt could rest, the discharge of accused must be regarded as conclusive of the matter.

**Certiorari:** REHEARING: COSTS. On a rehearing in *certiorari* the cause must be submitted on the record as it stood at the former submission, although affidavits have been since filed, and such affidavits will be stricken at the cost of the party filing the same.

*Certiorari to Polk District Court.*

FRIDAY MARCH 12, 1909.

A DECREE was entered in the district court of Polk County permanently enjoining J. C. Cain and Minnie Cain from keeping, using and maintaining the premises described, to wit, lot 8, in block 8, in Enterprise, Polk County, as a nuisance, and from selling or keeping for sale therein, or anywhere in said county, intoxicating liquors, and a writ of abatement was ordered to "be issued in this cause directed to the sheriff of this county directing and commanding him forthwith to seize all the intoxicating liquors of whatever kind found in said building or upon said described premises, and destroy the same, together with the vessels containing such liquors, and that he levy upon and advertise and sell such fixtures found in said building and used in maintaining said nuisance, as provided by law. . . . And the sheriff is further ordered to effectually close said building against the use for the keeping or sale of intoxicating liquors, and keep it securely closed for the period of one year, unless sooner released as provided by law." On January 14, 1908, Minnie Cain moved that the decree be so modified that the building be

used for lawful purposes, supporting the same by a show-ing that J. C. Cain had departed this life; that she had never willfully violated the liquor laws; that she could rent the property for legitimate purposes, and was in need of the income for the support of her family. The motion was overruled, for that the building was "closed as provided by the decree of Judge Howe as to the unlawful sale or keeping for sale of intoxicating liquors." On February 11, 1908, information was filed, charging that Minnie Cain, Hal Ferguson, and F. E. Montgomery had entered the building and used it in violation of the decree. These parties were brought into court on precept duly issued, and on such hearing as was had an order entered that the court;

Having heard the statements of counsel and the admission of the parties, in open court, finds that the building described has not been used for any illegal or unlawful business, and the court further finds that heretofore, on the 18th day of January, the defendant Minnie Cain submitted to the court a motion to modify the decree of injunction heretofore entered in the case of *W. C. Barber v. J. C. Cain,* and that upon said hearing this court refused to modify said decree, but declared on said hearing that the injunction granted in said case provided only against the unlawful sale or keeping for sale of intoxicating liquors, and that the injunction as so construed by this court has not been in any way or manner intentionally violated by the defendants herein. And the court further finds that at the time of the granting of the injunction referred to the attorney for the plaintiff presented and insisted upon a decree forbidding the use of the premises referred to in the information herein for any use for the period of one year, and that at said time the judge granting the injunction refused to grant a decree for any purpose except for the purpose of forbidding the sale of intoxicating liquors or keeping the same for sale upon said premises, and that no exception was taken of said decree, and that same has never been changed, modified or reversed. And the court further finds that the said premises

were closed upon the verbal order of the judge granting
said decree, with verbal instructions to the sheriff that the
closing of said building should be temporary only. The
court further finds that the defendant Minnie Cain, wife
of the late John C. Cain, has not sold intoxicating liquors
upon said premises, nor kept the same for sale thereon,
and that she never did anything relative thereto except
under the directions of her late husband, and the court
further finds that J. C. Cain, husband of said Minnie
Cain, departed this life in December, A. D. 1907, and
that the said Minnie Cain is the mother of six minor
children, depending upon her for support, and that the
use of said building is the sole means of support of the
said Minnie Cain and her children. And it appearing to
the court that the defendants and each of them has in no
manner willfully or intentionally violated the terms and
provisions of the decree or injunction referred to, and that
the plaintiff has failed to establish each and all of the
allegations of the information herein, upon which the de-
fendants were cited to appear in this court, it is therefore
ordered and adjudged that the defendants and each of
them be, and they are hereby, discharged.

Thereupon this proceeding in *certiorari* was begun
to test the legality of the order.——*Dismissed.*

*Dunshee & Dorn,* for plaintiff.

*W. A. Spurrier,* for defendant.

LADD, J.—The decree which the accused are said to
have violated ordered the sheriff "to effectually close said
building against the use for the keeping or sale of intoxi-

1. INTOXICATING
LIQUORS:
nuisance:
abatement:
closing of
premises.

cating liquors, and keep it securely closed
for the period of one year, unless sooner re-
leased as provided by law." Subsequently
one of the defendants therein asked that it
be modified, so as to permit occupation of the building for
other purposes, but the application was denied, with the

significant statement that "the building is to be closed . . . as to the unlawful sale or keeping for sale of intoxicating liquors." No bond appears to have been tendered, as exacted by section 2410 of the Code, and permission to open was not sought thereunder. The application was for a modification of the decree directing the building to be closed, entered in pursuance of a mandatory statute. *McClure v. Braniff,* 75 Iowa, 38; *McCoy v. Clark,* 109 Iowa, 464. The motion then was rightly overruled. The court was not called upon for an interpretation of the decree, and, if an erroneous reason for a correct decision was given, it did not impinge upon the nature or effect of judgment as actually entered. Just how the sheriff could effectually close this building against the use for keeping or selling of intoxicating liquors, and keep it securely closed without doing so for all purposes, we can not understand. "Effectually" means, according to the lexicographers, "in an effectual manner; with complete effect; so as to produce or secure the end desired; thoroughly." If the building is not to be closed for all purposes, what is the sheriff to do? How close it against the sale or keeping for sale of liquors, and so securely keep it for a year, and yet leave it open for all other purposes? Is he to clear the building of the objectionable commodity, and leave a deputy on guard to scrutinize all that is brought in the building during the year? No provision warranting this course is to be found in the Code, and therefore the only reasonable construction of the decree is that given the statute, of which it is a substantial copy. Section 2408 of the Code provides that: "If the existence of the nuisance be established in a civil or criminal case an order of abatement shall be entered as a part of the judgment in the case, which order shall direct . . . the effectual closing of a building, erection or place against its use for any purpose prohibited in this chapter and so keeping it for a period of one year unless sooner released. If any one

shall break or use a building or place so directed to be closed he shall be punished as for contempt as provided in the preceding section." It will be observed that the language of the decree is like that quoted from the statute, save that in the former the "purpose prohibited in this chapter" is specified, and the closing is emphasized by the word "securely." If, then, the section quoted means that the building is to be closed for all purposes, this decree must be so interpreted.

In *McCoy v. Clark,* 109 Iowa, 464, the form of a decree was presented to the court, directing that the sheriff "effectually close said building against its use, for any purpose prohibited by title 12, chapter 6, of the Code of Iowa, as the same is now in force, and so keep it closed one year, unless sooner discharged." To this was added by the court, "But not as against any other use or purpose"; and the decree entered as thus modified. Upon appeal, this court, in holding that the decree as presented should have been entered without the additional clause, said: "The building can not be effectually closed against the liquor traffic if it is open for the business that serves as a cover for that traffic. The language 'against its use for any purpose prohibited by this chapter' has reference to the cause for which the building is to be closed, rather than the manner of abating the nuisance. It is a nuisance because it is kept for purposes prohibited by that chapter, and the manner of abating the nuisance is by effectually closing it against all uses for the year, unless released under the provisions of section 2410. If this was not the legislative intent, why the provisions of section 2410 as to how the owner may release his property from the order? He can not release it as to the unlawful sale of intoxicating liquors; and, if it is not closed as to other uses or purposes, there is no necessity for the owner availing himself of the provisions of section 2410. If the building is not to be closed as against all uses, why the provision punishing 'any one who shall break or use the building so directed to be closed'? And

why compensate the sheriff 'for closing the premises, and keeping them closed,' if he is not in fact to do so? The decree, as presented by plaintiff's counsel, is in the language of the statute, and, as we construe the statute, would have the effect of effectually closing the building for one year against all uses, unless sooner released under the provisions of section 2410, and should have been approved." From the court's findings it is apparent that such was not the view of the law entertained, for therein it is pointed out that no intoxicating liquors had been sold, that the motion to modify had been overruled on the theory that only this was forbidden, that the judge entering the decree had orally interfered with its execution, and that the accused had not willfully or intentionally violated the injunction. They were bound to know that, after the closing of the building under the decree, they could not lawfully interfere therewith. Every one is presumed to know the law, and if the trial court in giving alleged reasons for not modifying the decree, which was in harmony with the mandate of the statute, or if the judge of the court entering the decree did not understand its effect, or, contrary to its terms, orally advised the sheriff to close the building temporarily only as is expressly found in this order, none of these matters justified the accused. It is notorious that bad reasons are often given for sound decisions; but no one is bound by them. The decision alone is controlling. Oral advice of a judge outside of court, like his oral orders not entered of record, are of no more consequence than the advice or order of any other equally good lawyer, save that, because of his position, these may command greater respect. *In re Guardianship of Kimball,* 127 Iowa, 665. Courts and judges can not be too cautious that officers and litigants be not misled in what may be said, and that decisions be so explicit that interpretation shall not be required, though always in harmony with the plain mandates of the law. Upon the execution of a prop-

er bond, the court could have ordered the building released, and this course would seem the more appropriate, where, as appears, the circumstances of the owner are such as to render it desirable that she have the income from the property.

As contended by plaintiff, the findings of the court proceed on the theory that the accused had been operating the building as alleged in the information, and that not-

2. SAME: *cer-tiorari:* failure to return record: review.

withstanding this they were not guilty, but it will be noted that there is no finding to this effect. No transcript of the "statements of counsel and the admission of the parties" on which the findings purport to have been based was returned, and, in the absence of any affirmative finding of facts on which the inference of guilt may rest, the discharge of the accused must be regarded as conclusive.

Several affidavits have been filed since a rehearing was granted; but, as the cause must be submitted on the record as it was on the former submission, all these will

3. CERTIORARI: rehearing: costs.

be stricken at the cost of the party filing the same. *Hintrager v. Hennessy,* 46 Iowa, 600; *Coe College v. Cedar Rapids,* 120 Iowa, 541; *Martin v. Martin,* 125 Iowa, 73.—*Dismissed.*