LOUIS TINNING, Appellee, v. JOHN F. MUMM, ET AL., Appellants.

**Intoxicating liquors:** NUISANCE: EVIDENCE: DEPOSITIONS.    Either
1  party to an equitable action may take his evidence or any part thereof by deposition, and in an action to restrain a liquor nuisance such depositions may be taken at any time after suit is commenced, and without any order of court therefor; and if taken for use on an application for a temporary injunction they may be also used on the final hearing, whether used on the application for a temporary injunction or not.

**Same:** SUPPRESSION OF DEPOSITION: DELAY IN FILING MOTION.    Where
2  no objections were made to the taking of depositions at the time they were taken, a motion to suppress the same not made for nearly two months afterwards and more than a month after they were filed was too late.

**Same:** NUISANCE: INJUNCTION: EVIDENCE.    The evidence in this action
3  to restrain a liquor nuisance is reviewed and held to make a *prima facie* case against defendants for maintaining a liquor nuisance, one as owner of the premises and the other as the active manager.

*Appeal from Grundy District Court.*—HON. CHARLES E. RANSIER, Judge.

TUESDAY, MARCH 8, 1910.

THIS is a proceeding brought by the plaintiff under the statute to enjoin the defendants from maintaining an alleged nuisance upon their premises in the vicinity of Reinbeck. There was a decree for the plaintiff, and the defendants appeal.—*Affirmed.*

*Bradford & Johnson,* for appellants.

*E. R. Acres,* for appellee.

EVANS, J.—The petition avers that the defendant Henry Mumm is the owner and controller of certain premises described therein, consisting of one hundred and twenty acres of land with buildings thereon, and that such premises are being kept as a place for the sale of intoxicating liquors with intent to sell the same in violation of law, and that the defendant John Mumm is the owner of such intoxicating liquors, and keeps the same with intent to sell the same, in violation of law. The testimony on behalf of plaintiff tends to show that the premises in question are located just outside the corporation of the town of Reinbeck, and about a mile or more from the business part of the town; that a certain building, known as a "dance hall" or "Mumm's Turner Hall," is situated thereon, and that it is resorted to by many people. The dimensions of this building are sixty by one hundred and twelve feet, and a part thereof is used for living rooms. Another part thereof is used as a place for the sale of "drinks." Preceding the bringing of this action, many people resorted thither and purchased drinks there, and many people came from that direction in an intoxicated condition. The defendant John Mumm was seen at different times "hauling what appeared to be beer kegs, cases, and whisky barrels to and from the dance hall." Evidence was also

introduced that the general reputation of the place was that it was a place where intoxicating liquors were being sold in violation of law. To this extent there was no dis-pute or denial on behalf of defendants in the testimony.

The plaintiff testified that on the 4th of July he went into the so-called barroom and found a number of persons therein, including the defendant John Mumm, and in this room there was a bar or counter on the east side extending about two-thirds or three-fourths across the room. There were glasses behind the bar. There were bottles full of liquid. Some of them were marked "Beer," and others were marked "Whisky." "The place smelled like a lager beer saloon." As against this testimony, the defendant introduced two witnesses, each of whom was an assistant at the barroom on the 4th of July in question. Each of them testified "that there was none of that kind (of liquor) placed on those shelves in that room on that day, and none of any such liquors of any kind sold on the premises that day." Each testified, also, that what they sold that day was pop and orange cider and mineral water. Whether such liquors were contained in bottles marked "Beer" or "Whisky" does not appear from their testimony. Neither of the defendants testified. It should be noted, also, that the plaintiff took the depositions of twelve or fifteen other witnesses, all of whom were manifestly hostile, and many of whom had visited the defendants' place and had procured drinks therein, and none of whom could identify the nature of the drinks which they so obtained.

I. The petition in this case was first presented to the court for an order in relation to a temporary injunction. The court indorsed thereon an order fixing a future date for the hearing of the application for a temporary injunction.

1. INTOXICATING LIQUORS: nuisance: evidence: depositions.

Such order provided that all testimony in support of such application and in resistance thereto should

be in the form of depositions and documentary evidence, and that such depositions should be used also upon the final hearing of the cause. The date thus fixed for the hearing of the application was December 7, 1908, and we infer from the record that this was the regular return day of the December, 1908, term. On September 17th the plaintiff served upon the defendants a notice to take depositions on October 12th. On the date named the depositions of many witnesses were taken, and the defendants appeared thereto in pursuance of such notice. On December 7, 1908, the plaintiff waived his application for a temporary injunction, and the final hearing of the case was set for a later date.

On the trial the plaintiff was permitted to read in evidence the depositions previously taken. The defendant objected to the use of these depositions on the final hearing on the alleged ground that they had been taken to be used on the hearing for temporary injunction. It is contended that the court had no authority to order that the same depositions could be used at the hearing for temporary injunction and at the final hearing also, because such order was made before the return day and before defendants had appeared in the case, and was therefore *ex parte*. It is needless to discuss this question in this form. The plaintiff required no order of the court in order to entitle him to take his evidence in the form of depositions. Section 3652 of the Code provides that "either party may at pleasure take his testimony or any part thereof by deposition." Section 4684 permits such deposition to be taken at any time after the suit is begun. Statutory notice was given to the defendants, and they appeared by counsel; the depositions being taken by oral examination. We know of no reason in principle or authority why a deposition properly taken may not be used at the final hearing of such a case as this, whether it was used on a hearing for temporary injunction or not.

The defendants made no objection to the taking of the depositions at the time they were taken, nor did they file any motion to suppress the same until more than a month after they had been filed and nearly two months after they had been taken. Their motion was therefore filed too late. Code, section 4712. The defendants also made specific objections to the depositions of certain witnesses because of a discrepancy in the names appearing in the notice to take depositions. What we have already said is conclusive on that question also.

*2. SAME: suppression of depositions: delay in filing motion.*

II. The defendants insist upon the insufficiency of the evidence. This insistence is largely based upon the testimony of hostile witnesses used by the plaintiff to which reference has already been made. The following quotations are illustrative. The witness Jacobsen testified as follows:

*3. SAME: nuisance: injunction: evidence.*

I know the Mumm's Dancing Hall south of Reinbeck. I was there yesterday. Am in the livery business. Have been there every month of the year. Was hired to take people out to Mumm's Dance Hall. I have gotten something to drink in that building. I didn't call for anything. Can't tell you who waited on me. I don't know what you call a bar or counter. Don't know the difference between a counter and bar. During the summer past have drunk there different times. Didn't call for anything. Don't know who waited on me. Don't know the person tending bar there. I didn't pay for what I got. Some one treated me. I suppose they paid for what I drank. It was generally drawn from a bottle. I can't tell the difference between a beer bottle and whisky. Never asked anything about it. Don't know as I ever drank beer or whisky. Q. Have you at different times in other places drunk what they call beer? A. I thought this was only Mumm's you were asking about. I got it down home if I want it. I get it for myself. Q. Did this stuff you drunk at Mumm's out of the bottle look like beer? A. It might look like it. I don't know what it was. I don't

know whether it foamed or not.  Q. Did it smell like beer
or taste like beer?  A. I didn't smell of it or taste it
either.  Q. Didn't you drink it?  A. I poured it down.
I didn't take any notice of that at all, if it was a certain
grade of beer.  I wasn't in that kind of business.  I was
in the livery business.

Witness Ohrt testified as follows:

Live at Reinbeck.  Am a plumber and know John
Mumm.  I have heard of the dance hall.  Mr. Mumm
lives in the south part of town, and did in the summer
and fall last past.  I suppose Henry Mumm lives with
John.  They live just outside the corporation.  It is about
a mile and fifteen or twenty rods from the main part
of town.  I have been down to the Mumm Dance Hall
several times during the summer past.  I was not directed
by the mayor to act as a guard down there.  Upon the
advice of my attorney, I decline to answer any question as
to whether or not I was working down there for Mr.
Mumm, as it might tend to incriminate me.  I have pur-
chased something to drink down there quite a while ago.  I
don't know what it was, nor who waited on me.  I called
for something to drink, but I don't know what it was.  It
was in a glass.  I don't know whether it foamed like beer.
I don't know whether it looked as I ever saw beer be-
fore.  I don't know whether it tasted like beer.  A bunch
of us drank there.  I don't know what we paid for it.
The room I drank in is in the northwest corner of the
building in my judgment.  I don't know what a bar is.
There was a counter there.  I last drank there quite a
number of days ago.  I don't know who waited on me.
The party who waited on me was part of the time be-
hind the counter and part of the time in front.  I decline
to answer whether I ever tended bar there for John F.
Mumm, because my attorneys advise me that I need not
answer it.

Witness Watson testified as follows:

I know the defendant Mumm and the Mumm Turner
Dance Hall south of Reinbeck.  Was down there last summer.
Q. Did you see people around that building who acted

as though there were drunk? A. I don't know what 'drunk' is. I saw people in that building drinking out of glasses. There was a counter there. I drank there. I called for the 'drinks.' The person behind the counter gave me something that had 'Golden Brew' on the bottle. The fellow with me paid for it. I don't know what it was. I know what it was called. Further than that I don't know anything. Q. Have you ever drunk beer? A. I don't know what beer is. I don't know what the chemical parts of it is. I don't know what is commonly called beer. Nor what it looks like. Nor nothing about it. Me and Ralph Slessor, who is farming, somewhere about a year ago drank in there. No marks on the bottle. I have paid for drinks in there.

The courts are too familiar with this kind of testimony. The ignorance which is here professed is always affected by those most competent to judge of the character of the "drink." As far as our judicial observation goes, this form of agnosticism is confined to witnesses in liquor cases, and it has the odor of intoxicating liquor. upon it. The moral insensibility disclosed by this kind of evidence is greatly to be deplored. In its intent it is manifest perjury. Its only mitigation is that no one can be deceived by it. The testimony of the plaintiff alone is sufficient to make a *prima facie* case. It is materially corroborated by these very unwilling witnesses. Neither of the defendants saw fit to take the witness stand in denial of any matter testified to by the plaintiff. It would be morally impossible to entertain any doubt of the maintenance of the nuisance upon the testimony before us.

It. is specially urged that there is no testimony to connect the defendant Henry Mumm with the maintenance of such nuisance. It is stipulated that he is the owner of the property. In other respects the evidence is very meager indeed. But there is some evidence that he lives there with John Mumm. This was sufficient to make a *prima facie* case against him. The evidence seems to have

been directed mainly towards defendant John Mumm as the active dispenser of the "drinks." The fact, however,, that John was most actively connected with the nuisance would not render the other defendant any less amenable to the statute as the owner of the premises and presumptively in possession and control thereof.

The decree of the trial court is sustained by this record, and it is affirmed. Plaintiff is allowed $25 as attorney fees in this court to be taxed as costs here.—*Affirmed.*