C. W. NIES et al., Plaintiffs, v. J. W. ANDERSON, Judge, Defendant.

INTOXICATING LIQUORS: Contempt—Violating Temporary Injunction—Existence of Permanent Injunction—Effect. Proceedings to punish for contempt in violating a *temporary* injunction against the unlawful trafficking in intoxicating liquors, may not be defeated by a showing that, prior to the issuance of said temporary injunction, defendant had been *permanently* enjoined. Secs. 2405, 2407, Code, 1897.

JUDGMENT:   Collateral Attack—Existence of Both Temporary and Permanent Injunction. Principle recognized that a judgment may not be collaterally attacked.

INJUNCTION:   Contempt—Conviction—Certiorari—Hearing Not De Novo. On certiorari to review a conviction for the violation of an injunction, the hearing is not *de novo.* Secs. 2407, 4468, Code, 1897.

INTOXICATING LIQUORS:   Contempt—Conviction—Certiorari— Rules of Review. On certiorari to review a conviction for violating an injunction, the following rules of review will be applied:

1. The findings of the trial court, while given weight, will not be given the weight which would be given to a verdict.

2. Guilt need not appear beyond a reasonable doubt, but the evidence must more than preponderate.

Evidence reviewed, and held insufficient to hold defendants responsible for liquor found upon their premises. Secs. 2407, 4468, Code, 1897.

INTOXICATING LIQUORS:   Contempt—Evidence—Participation in Illegal Sales. Evidence reviewed, and held to establish defendant's direct participation in the installation of a drinking place and the securing of liquors for sale therein. Sec. 2407, Code, 1897.

INTOXICATING LIQUORS:   Contempt—Evidence—Percentage of Alcohol in Article Sold. If an article sold as a beverage contains any appreciable amount of alcohol, its sale is illegal, irrespective of the good faith of the seller. Sec. 2382, Code Supp., 1913.

INTOXICATING LIQUORS:   Contempt—Punishment—Good Faith of Seller—Effect. The good-faith belief that a beverage sold did not contain alcohol, while constituting no defense, does and should materially control the punishment. See Sec. 2407, Code, 1897.

INTOXICATING LIQUORS:   Contempt—Illegal Sales By Tenant— Knowledge Or Consent of Landlord Essential. A landlord who has no knowledge, directly or indirectly, of sales of intoxicating liquors on his premises and by his tenant, and who does not, directly or indirectly, consent to such sales, may not be convicted of *contempt.* Sec. 2407, Code, 1897. So held where the sole knowledge of the landlord was that the tenant was selling "soft" drinks. See Secs. 2405, 2407, Code, 1897.

**INTOXICATING LIQUORS:** Contempt—Presumption of Illegal Sale
9   Not Conclusive.   The presumption of illegal sale or intent to
sell which, at best, prevails against the owner of a hotel by
reason of finding intoxicating liquors therein, is rebuttable
in a quasi criminal prosecution for *contempt*, and is wholly
overthrown by proof that such owner did not, directly or in-
directly, know of such sales, and did not, directly or indirectly,
consent to such sale or keeping for sale.   Sec. 2427, Code, 1897.

*Certiorari from Woodbury District Court.*—J. W. AN-
DERSON, Judge.

### WEDNESDAY, FEBRUARY 14, 1917.

CERTIORARI to review the action of the said judge.   The
plaintiffs   were   adjudged   guilty   of   having   violated
a temporary injunction, enjoining them from violations of
the laws of the state regulating the sale and keeping for
sale of intoxicating liquors, and bring this proceeding to
review the judgment finding they had violated said injunc-
tion.—*Affirmed in part; annulled in part.*

*T. F. Bevington* and *Jepson & Stecker,* for plaintiffs.

*John F. Joseph,* for defendant.

SALINGER, J.—I.   It is complained that the defendant
judge was swayed by passion and prejudice, and maintained
a non-judicial attitude towards the defendants and their
rights throughout the trial.   We have to say that, if any
criticism be warranted, it is that the trial judge was utterly
too patient.   We will not enlarge, beyond saying that Mr.
Bevington, of counsel for the defendants, indulged in un-
ceasing objections that seem utterly without warrant, and
that he persisted in filling the record to an enormous ex-
tent with matters that can throw no possible light on what
the proceeding involves for decision.

II. All the defendants were charged

**1. INTOXICATING LIQUORS: contempt: violating temporary injunction: existence of permanent injunction: effect.** with violating a temporary injunction granted on February 16, 1915. C. W. Nies contends that he may not lawfully be punished for violating that injunction, even if he disobeyed it; because, before this temporary injunction was granted, he had already been permanently enjoined. He claims his case is within the rules of *Dickinson v. Eichorn,* 78 Iowa 710, and *Steyer v. McCauley,* 102 Iowa 105. The difficulty is that whether a second injunction shall issue when another is in existence may depend on evidence on whether the first injunction was obtained colorably,—as a device for interfering with the enforcement of the prohibitory law. Had he made due objection to and appealed from the granting of the second injunction, he would have the right to have considered whether the second injunction should have been allowed. But interposing to a charge of contempt for violating an

**2. JUDGMENT: collateral attack: existence of both temporary and permanent injunction.** injunction that the injunction should not have been granted, is a purely collateral attack upon that injunction on the ground that it was error to grant it. We think he is within the rule of *Geyer v. Douglass,* 85 Iowa 93, that, though the evidence may be insufficient to support the granting of an injunction, that fact does not make the injunction subject to collateral attack.

If it be his claim that a temporary injunction is merged in, and its effect destroyed by, a permanent injunction later granted, it may be said that that is probably the law. See Code, 1897, Sec. 4356; *Giliman v. Talley,* 140 Iowa 718; *Chamberlain v. Brown,* 144 Iowa 601; *Horrabin v. City,* 160 Iowa 650; *Bethany Cong. Church v. Morse,* 151 Iowa 521. It is doubtful whether this point is made, and whether more is claimed than that the second injunction should not have issued because it was the second in-

junction. Be that as it may, the law does not fit the case. The temporary injunction which defendant is accused of having violated was never followed up by a permanent injunction. Consequently, there is no occasion to consider the effect of subsequent permanent injunctions upon an antecedent temporary one. <sup>(3)</sup>

III. Plaintiff contends that certain of our decisions hold that the review of action on a charge of contempt is a hearing *de novo*. We hold the contrary in *State v. Intoxicating Liquors*, 76 Iowa 243, at 244, and in *Nies v. Jepson*, 174 Iowa 188. *Lindsay v. Clayton District Court*, 75 Iowa 509, does not decide that the review is *de novo*. Neither does *McNiel v. Horan*, 153 Iowa 630; *Barber v. Brennan*, 140 Iowa 678; *Lewis v. Brennan*, 141 Iowa 585, at 586; *Sawyer v. Hutchinson*, 149 Iowa 93; and *Allen v. Brennan*, (Iowa) 126 N. W. 771. All involve a review of an acquittal. *McNeil's* case is, on this point, that, while the findings below do not have the force and effect of a verdict, they will be reluctantly interfered with if the evidence is in conflict. *Barber v. Brennan* is that a refusal to punish is not disturbable if there be evidence upon which it may properly be found that defendant is not guilty; but, if the evidence of violation is conclusive, the facts will be reviewed and a remand ensue. An acquittal upon conflicting evidence will not be annulled unless the finding of not guilty is clearly wrong. *Allen v. Brennan*, supra. The *Sawyer* case says, "Of course, if the testimony be uncontradicted, or so clearly preponderates as to make it reasonably conclusive that the party charged was in contempt, we shall have no hesitancy in annulling the proceedings and remanding the case for proper action;" but that the opinion of the trial court will not be wholly disregarded if there be a substantial conflict in evidence. The *Lewis* case holds merely that we cannot disturb an acquittal if there be no

**3. Injunction:** contempt: conviction: certiorari: hearing not *de novo*.

affirmative finding upon which guilt can be predicated, and the evidence is not before us.

*Dutton v. Anderson,* 163 Iowa 613, and *Cheadle v. Roberts,* 150 Iowa 639, 642, hold that, in reviewing a finding of guilty on certiorari, weight will be accorded the finding of the trial court. *Rist v. District Court,* 162 Iowa 244, is that a finding of guilty of contempt will not be disturbed if there be a substantial conflict. *Sawyer v. Hutchinson,* 149 Iowa 93, rules that a contempt proceeding is quasi criminal, and requires a greater weight of evidence than ordinary civil cases, and a clear case should be made before punishment is inflicted for the violation of an injunction. It has support in *Hydock v. State,* (Nebr.) 80 N. W. 902. *In re Taylor,* (Calif.) 10 Pac. 88, holds the same, and adds a requirement of clear and satisfactory evidence, establishing guilt beyond reasonable doubt. So does *State v. Cunningham,* (W. Va.) 11 S. E. 76. *Benbow v. Kollom,* (Minn.) 54 N. W. 482, says that the evidence is too indefinite in vital points to sustain a finding of violation.

4. INTOXICATING LIQUORS: contempt: conviction: certiorari: rules of review.

On the whole, we think the rule is that the review is not *de novo;* that, while the finding below has weight, it does not have as much as has a verdict; and that, while evidence to sustain a finding of guilty must amount to more than the mere preponderance which sustains an ordinary recovery on the law side, it is not required to prove violation of an injunction beyond a reasonable doubt.

IV. A bottle of whiskey, partly full, was found in a pantry in the basement, and a hidden quantity of bottled beer in another part of the basement, and sacks full of empty beer bottles were also found therein. And there is testimony that, prior to this raid, some beer drinking by women occurred in a room of the hotel, tenanted by defendant, Mrs. Nies.

Whatever effect the finding of this liquor would have if no more than finding it appeared, the evidence satisfies us that neither defendant is responsible for the presence of this liquor. As to the beer, there is an almost conclusive showing that they are not. The chauffeur and the porter employed about the place testified, without any direct dispute, that the hidden beer was gotten by them in another state, to be used on a picnic a little later, and that the whole enterprise was something of which Mrs. Nies and her husband knew absolutely nothing; and it appears that, when Mrs. Nies ascertained that this had been done, at least one of these employes, if not both, were by her discharged. It is true that there are slight flaws in this evidence. For instance, they claim to have placed but 76 bottles of beer in hiding, and some 10 bottles more than that were found. Then, too, this picnic was to be had at or near a point which the buyers of it had to pass in taking the beer to Sioux City to be hidden. But when all is said, the evidence on the beer found is in such condition as that, under the rules of review on certiorari as we have stated them, the finding of the beer does not help to maintain the charge at bar. Under the same rules, we are constrained to hold that the evidence fails to sustain the claim of drinking by women, assuming that it would be material if proved. The finding of empty beer bottles creates no presumption of illegal sale or keeping for sale, and the evidence satisfies us that the defendants are not shown to have been responsible for those being where they were found.

V. The injunction restrains Nies, his

5. Intoxicating Liquors : contempt: evidence: participation in illegal sales.

servants, agents, tenants, and representatives and employes, or by, through or under any person or persons directly or indirectly, by, through upon or under any device, apparatus or evasion, from keeping for sale intoxicating liq-

uors. Now, if it be material whether he was a mere volunteer, he seems not to have been that.

It appears that he was putting in his time "as husband" in arranging to get the basement of his wife's hotel turned into a pool hall and soft drink parlor. He says his object in having "this" put in was to prevent a violation of law, and his intent was to help the hotel along in the way of rent. He helped Paxton, the lessee of his wife, to select and in part to put into readiness for operation, the apparatus which Paxton was to use in vending beverages. He furnished cash bail when women were arrested for drinking in the hotel; and there is evidence from which it can be found that, when the officers attempted to raid the hotel at the time when the malta, the keeping of which is the basis of the prosecution, was found therein, he acted in opposition to their entering, and that they found themselves ultimately compelled to break in.

About the only difference between him and the subtenant, who was to sell the malta, is that Nies did not own the keg of "malta" beverage which he helped the tenant to get and put into the place, nor own the paraphernalia to be used in selling the malta. We think he is in no essentially different position than he would be in if, instead of helping Paxton to get ready to sell or sell malta in this hotel building, Nies himself had gotten the beverage, apparatus wherewith to vend it, and was keeping the malta there with intent to sell. See *State v. Stevens,* 119 Iowa 675; *State v. Wilson,* 152 Iowa 529; *State v. Intoxicating Liquors,* 109 Iowa 145; *Erbacher v. Anderson,* 161 Iowa 546, at 548; *Dutton v. Anderson,* 163 Iowa 613; *State v. Farley,* 87 Iowa 22; and *State v. Hale,* 91 Iowa 367.

We do not say that any one of these cases covers every angle of the situation. To illustrate, one, *State v. Intoxicating Liquors,* supra, denies that it is a differentiation that Nies was not the owner of the malta. What we do mean

to say is that these cases, taken together, make it fairly clear that Nies must be dealt with as a direct participant, and that it must be held that he violated the injunction against him, if keeping malta with intent to sell is such violation.

VI.   There is evidence that a liquor which may contain no alcohol when received may, through fermentation and other causes, develop alcohol.

6. INTOXICATING LIQUORS : contempt : evidence : percentage of alcohol in article sold.

There is other evidence that both plaintiff and defendants had malta analyzed, and that but a comparatively small percentage of alcohol was found therein. And defendants claim that the handling before and in connection with the analysis increased that percentage. All this accomplishes little, because, of necessity, its sole object is to show that malta is or is not intoxicating.

In *State v. Colvin,* 127 Iowa 632, the beverage contained less alcohol than this malta does on any theory of the evidence. And we held, in the *Colvin* case, that the percentage of alcohol is immaterial, because the statute specifically declares that alcohol is an intoxicating liquor, and that this makes any beverage which contains alcohol, intoxicating liquor, though the beverage be never so weak an actual intoxicant, and however much the alcohol may be diluted; and we conclude with saying: "The statute so declares, and it is conclusive."

In *Sawyer v. Botti,* 147 Iowa 453, we declare that any beverage manufactured from malted grain by the process of fermentation is, without regard to the amount of alcohol contained therein, or of whether the fermented beverage is in fact intoxicating, within the statutory definitions of liquors whose sale is prohibited.  In *State v. Stickle,* 151 Iowa 303, we apply the rule of the *Sawyer* case to a beverage known as Liberty Malt, and say the statute covers malt liquor as a beverage if .it contains any amount of alcohol, and

though the beverage be non-intoxicating; and we hold evidence inadmissible that such beverage would not produce intoxication. And see *State v. Intoxicating Liquors,* 76 Iowa, at 244.

In *Bradshaw v. State,* (Ark.) 89 S. W. 1051, there was less alcohol than here, and it is held that sale of it as a beverage was unlawful, whether the compound was intoxicating or not. According to *State v. Yager,* 72 Iowa 421, neither whether the beverage is intoxicating nor the extent to which it was diluted, nor whether the use of the particular beverage within reasonable limits may or may not result in intoxication, is the test; and it is said that a beverage containing alcohol in any appreciable proportion is condemned, although it is only in exceptional cases that the use of any intoxicating liquor as a beverage results in intoxication.

Both *Commonwealth v. Brelsford,* (Mass.) 36 N. E. 677, and *State v. Gravelin,* (R. I.) 16 Atl. 914, deal with a less percentage of alcohol than was found in the malta, and hold that the beverage is intoxicating liquor within the meaning of the statute defining intoxicating liquor, and that evidence to show it was in fact not intoxicating is incompetent. To like effect is *State v. O'Connell,* (Me.) 58 Atl. 59.

### 6-a

Some matter found in the record which bears on good faith of the defendants is hearsay and incompetent, in any view. But there is no question of good faith involved. The test is the character of the compound; that, and not the good faith of the seller, determines the legality of the sale. *State v. Gregory,* 110 Iowa 624, at 626. It is immaterial that defendant acted in good faith, relying on the assurance of the manufacturer or wholesale seller that the compound was not intoxicating. It does not matter that the respondent did not know that the tonic sold by him contained intox-

icating liquor, was assured by the manufacturer that it did not, and relied upon this. He was bound to know its character. *State v. Lindoen,* 87 Iowa 702.

Hence, it does not matter that both Nies and his wife testified that they had no intention to sell liquor illegally or have it sold, or to keep it or have it kept for sale. It does not avail that the seller did not know the liquor was intoxicating. *Commonwealth v. Boynton,* 2 Allen (Mass.) 160. Nor that he believed it to be non-intoxicating. *Commonwealth v. Waite,* 11 Allen (Mass.) 264; *State v. Smith,* 10 R. I. 258; *Barnes v. State,* 19 Conn. 398. It is no defense to an indictment for keeping or selling adulterated or intoxicating liquors that defendant did not believe them to be that. *Regina v. Woodrow,* 15 M. & W. *404; *Commonwealth v. Farren,* 9 Allen (Mass.) 489; *Commonwealth v. Nichols,* 10 Allen (Mass.) 199; *Commonwealth v. Smith,* 103 Mass. 444; *State v. Smith,* 10 R. I. 258; *People v. Zeiger,* 6 Parker's Criminal Rep. (N. Y.) 355.

The matter seems to be put upon the ground that, on considerations of public policy, it is deemed best to require, as to some things, that one must ascertain at his peril whether what he does comes within the legislative prohibition. 8 Ruling Case Law 122.

7. INTOXICATING LIQUORS: contempt: punishment: good faith of seller: effect. We cannot interfere with the finding that defendant C. W. Nies is guilty, as charged. He was ordered to pay a fine of $1,000, and, in default of payment, to be committed to the jail of the county for a period of 300 days. In addition, there was a judgment imprisoning him in said jail for three months. We think that, on this record, the order imprisoning for three months should be annulled, and no more remain effective than that he pay said fine, and in default of payment be committed for 300 days. While we have said that intention, good faith and want of knowledge that the liquor was intoxicat-

ing are not defenses, these elements do have bearing on what the punishment should be, and we think that, the showing as to intent, want of knowledge, good faith and the like, being undisputed, and there being no evidence that the defendant has ever been found guilty of violating the liquor law before, this modification is demanded of us.

### DIVISION II.

8. INTOXICATING LIQUORS: contempt: illegal sales by tenant: knowledge or consent of landlord essential.

I. As to the defendant Mrs. J. A. Nies, we have first to decide whether, as is sometimes true on the civil side, one is bound by what his tenant does, though he neither knows it is being done, and, even though knowing, he disapproved, but did not stop its doing.

We have held the presumption from finding obtained against a registered pharmacist indicted for maintaining a liquor nuisance. *State v. Shank,* 79 Iowa 47. In fact, Section 2427 of the Code of 1897 provides that the finding of liquors in the possession of one not legally authorized to sell, if found in such a place as this was, and being found in unusual quantities, even in a private dwelling, shall be presumptive evidence that such liquors are kept for illegal sale. We have held that evidence as to finding a large quantity of liquor in the house where a defendant lives with his father, where there is also some found in the place named in the indictment for nuisance, was competent, which manifestly proceeds on the theory that defendant probably knew of the additional liquor stored in his own home. Of course, we have applied this presumption in cases to obtain an injunction, but that is on the civil side. *Shideler v. Naughton,* 163 Iowa 616; *Shidler v. Keenan,* 167 Iowa 70.

In *Tinning v. Mumm,* 146 Iowa 263, at 267, *Barber v. Brennan,* 140 Iowa 678, we use language which, by overlooking that the cases are attempts to obtain injunctions,

gives color to the claim that the doctrine of *respondeat superior* applies elsewhere than in civil actions.

And we held in *Nies v. Jepson*, 174 Iowa 188, a prosecution for contempt, that finding liquor in a locked room in this hotel at least raised a presumption that someone was keeping liquor there with intent to violate the law. This is not finding guilt by construction, but a holding that presumptions or rules of evidence created by statute obtain in contempt proceedings.

Some cases that, on surface reading, might be taken to hold that one may be found guilty by the application of *respondeat superior*, or because of the relation of principal and agent, in fact turn upon actual knowledge.

In *Stromert v. Johnson*, 144 Iowa 682, at 684, what is really held is that, where illegal sales are frequent and open, it is fairly made to appear that the employer knew illegal sales were being carried on. *McCracken v. Miller*, 129 Iowa 623, is, to begin with, a civil action. In it the question of whether an owner should be enjoined is fully gone into by an inquiry on whether there was evidence that he knew his tenant was conducting an unlawful liquor business. While it is held he had sufficient knowledge, his being enjoined turns on that, and not on the proposition that he might, on the criminal side, be held to know by construction whatever his tenant did or knew.

And there is another class of cases, of which *State v. Arie*, 95 Iowa 375, and *Dudley v. Sautbine*, 49 Iowa 650, are illustrations. They involve the doctrine that, if one employs another to work in or have charge of a saloon, he may not escape liability for illegal sales made, though he has expressly forbidden such sales. That, once more, is not a holding that, if a tenant without the knowledge of his landlord keeps intoxicating liquors on the leased premises, the landlord may be found guilty of contempt of court. All

they do hold is that whosoever creates an agency for the sale of liquor may not, as a matter of public policy, be heard to say that illegal sales made by the agent were without his knowledge and consent. If any other rule prevailed, it would make it practically impossible to punish the owner of a saloon for illegal sales made. therein, if he will remain away from the saloon, physically.

Other cases make it clear that *respondeat superior* and the laws of agency or of landlord and tenant have no application. In *State v. Findley*, 45 Iowa 435, a clerk made a single sale of liquor, and we reversed a conviction of his employer because there was no liquor found in his place of business, and because, having no knowledge of this sale, he could not be held criminally responsible for it. In *State v. Arie*, 95 Iowa 375, we hold that, where the agent makes an illegal sale of liquor, there is a presumption that the employer knew of it and consented thereto, and that it is for him to show the contrary if he can. This, of course, negatives the idea that *respondeat superior,* agency or the like, apply. For, if that were so, the employer would not be permitted to show that the act was without his knowledge and consent. Where one is bound because his agent did a thing within the scope of authority, it would be an idle answer that the principal did not know and consent. As matter of law, he charges himself with knowledge and consent by the creating of the agency.

As bearing on the proposition, there is held, in *State v. Gravelin,* (R. I.) 16 Atl. 914, what is the converse in situation, but the same in principle, namely: that, if one defendant is sole proprietor, and has sole charge, and the other merely kept and maintained the premises as his servant, under his direct personal supervision, the latter cannot be convicted.

We think the statute prohibition

9. INTOXICATING
LIQUORS : con-
tempt : pre-
sumption of ille-
gal sale not
conclusive.

against violating the liquor laws, by servant, agent, employe, or tenants, and commands in injunctions that there shall be no illegal sale or keeping for sale by a servant, agent, tenant, employe, mean, so far as criminal or quasi criminal cases are concerned, that one shall not be allowed to shield himself by the evasion of having someone else do what he himself is in person forbidden to do; that the utmost that can be made of finding liquor in a hotel building is to raise a presumption that the owner has, either by himself or agent, servants, tenants, or employes, violated the liquor law or an injunction against the illegal sale of liquor, respectively; that there is no conclusive presumption he has guilty knowledge of what these others do; and that, if he shows they kept liquor for illegal sale without his knowledge or consent, direct or indirect, the owner of the building cannot be punished as for a violation of statutes making such illegal sale a crime, or violating an injunction forbidding such sales. In other words, one cannot become a criminal by construction or by constructive notice, nor the naked fact that he becomes a landlord.

II. With the finding of liquor and sacks filled with empty bottles, and the drinking in the hotel out of the way, the evidence against her is that the lease she made suggests a suspicion as to what she thought would be done under the lease. She was getting $60 a month for the use of a dark and fairly inaccessible set of rooms in a basement, to be devoted to the ostensible purpose of selling soft drinks. There was to be also an immediate institution of a pool and billiard room; and no preparations for such were made. There is something of an explanation of this. But she has one point of differentiation, because, during all the times immediately concerned, she was away visiting sick and dying relatives in another state and, therefore, has strong

grounds for claiming that, unless she be charged with notice as matter of law, she had no knowledge that anything but soft drinks were to be or were put into her hotel with purpose to sell the same as a beverage.

. We are not overlooking that her actual intent or want of knowledge is in one sense immaterial. If she knew that malta was being put in, and it turns out that malta was an intoxicating liquor, then, in contemplation of law, she knew that the injunction against her was being violated, and consented to the violation. The distinction is this: If all she knew in fact was that soft drinks were about to be put in, she is not criminally liable, because a soft drink is not intoxicating liquor. But if she knew that malta was being put in, and that was in fact an intoxicating beverage, then it is not material that she believed malta was not an intoxicating liquor. As somewhat bearing on this point and another, we call attention to *Potter v. Harvey*, 30 Iowa 502, which holds that, though it is the rule that one who pays after he knows representations made at the sale are false, is estopped to claim damages on account of such representations, yet this is not so if his contract was made through an agent, and the principal was ignorant of the false representations' having been made, although he knew the facts showing their falsity.

We have already disposed of the finding of beer and the bottle partly filled with whiskey, even as to the man Nies.

She testifies that she did not know that any preparation was being made to sell any other than soft drinks, and would not have let Paxton have the room if she had known it; and testifies in the strongest terms to want of actual knowledge that at any time intoxicating liquor had been sold or kept for sale in her hotel; and that it was not her intention to keep it, direct it to be kept, and, if any was kept for such purpose, she did not know it. Nowhere

is there any evidence on her part or that of anyone that she ever heard of malta, or knew that that particular liquid was being put in or kept in her building. Those who say they bought beer of her husband do not claim to have bought any of her. It appears that she discharged at least one of the men who had been concerned in putting beer in there; when she ascertained that beer had been found, she cancelled the lease.

As seen, she is not to be found guilty by an application of rules in the law of landlord and tenant.

Taking into consideration the standards of review ruling in review on certiorari of a finding of violating an injunction by acts not committed in the immediate presence of the court, we are constrained to annul so much of the order in consideration as found the plaintiff in certiorari, Mrs. J. A. Nies, guilty of violating the order of court with whose violation she is charged.

Accordingly, our conclusion is that the order and judgment of the trial court must be annulled as to the defendant Mrs. J. A. Nies, and as to so much of its order as commits the defendant C. W. Nies to jail, additional to the conditional imprisonment in default of payment of fine. As to the order imposing the fine, and the alternate imprisonment in default of payment of same, the petition is dismissed.—*Affirmed in part; annulled in part.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.