C. N. McMILLAN, Plaintiff, v. J. W. ANDERSON, Judge, Defendant.

INTOXICATING LIQUORS:    Contempt—Unusual Quantities—Presumption. Ten gallons of whisky in a dwelling house, and in the unfinished and inaccessible attic thereof, constitute an "unusual" quantity, and raise a presumption that such liquors were kept for the purpose of illegal sale. Evidence on the issue whether the same was kept solely for family use reviewed, and held not to overcome the presumption. (Sec. 2427, Code, 1897.)

   SALINGER, J., dissents as to the scope of the review and the effect of the evidence.

INTOXICATING LIQUORS:    Contempt—Evidence—Reputation of Place. Evidence of the general reputation of a place where intoxicating liquors were found is admissible in an action to *enjoin*, but inadmissible in an action to punish for *contempt.* (See Sec. 2406, Code Supp., 1913.)

*Certiorari to Woodbury District Court.—*J. W. ANDERSON, Judge.

May 20, 1918.

Writ of certiorari was issued on application of plaintiff, to which return was made, and the record is here for review.—*Annulled.*

*John F. Joseph,* for plaintiff.

*E. E. Baron,* for defendant.

Ladd, J.—Barney Kopel, during the period in question, occupied the second story of the dwelling house known as 1216 Sixth Street, Sioux City, as a residence. On May 25, 1917, a decree of court enjoined him from maintaining his place of residence as a liquor nuisance. Thereafter, on August 6, 1917, the plaintiff herein filed an information, alleging that Kopel had violated the terms of the decree by selling and keeping for sale in his residence intoxicating liquors, and therefore was guilty of contempt of court. A precept was thereupon issued, requiring Kopel to be brought before defendant herein, as judge of the fourth judicial district, which was done, and he denied the charge; but, upon hearing, he was found not guilty. Thereupon, a writ of certiorari was sued out, bringing the proceedings here for review. The evidence discloses that, on July 23, 1917, shortly after 2 o'clock in the afternoon, four policemen searched the premises of Kopel for intoxicating liquors, and found eight gallons and eight quarts of whisky in the attic, to which there was neither stairway nor ladder. It was reached by having one of them climb on another's shoulders and crawl through a hole in the ceiling. The attic was unfinished, and empty, save for this whisky and a couple of empty bottles and a broken one. The eight quarts were in quart bottles in a beer crate. The eight gallons were in jugs, which were in cartons. On the other hand, defendant, who had resided in Sioux City about twelve years, testified that his occupation, since the entry of the decree, had been buying iron and junk in the country and shipping by

1. Intoxicating liquors: contempt: unusual quantities: presumption.

the carload to Sioux City; that he usually returned to the city Saturday, stayed over Sunday, and went back to the country on Monday; that the liquors belonged to him; that he bought the liquor found, and no more, at Jefferson, South Dakota, some time in May.

"Q. For what purposes were you keeping that liquor? A. For my family use. Q. For yourself? A. Myself and my family and my wife. Q. Have you sold or kept for sale any liquor since May 26, 1917? A. No, sir. Q. And this liquor that was found there was yours, and kept for your own use? A. Yes, sir."

Witness further testified that, prior to May 1st, he had dealt in intoxicating liquors.

"Q. You are not a drinking man, are you? A. I take a little drink. Q. When. A. When I feel like it. Q. What do you drink usually? A. Whisky. Q. Drink beer? A. Sometimes. Q. How does it come you did not have any beer up there? A. This about closing time, and whatever beer I had, we drank it up. Q. When did you put this in? A. In May. Q. Before the injunction was granted? A. Yes, sir. * * * Q. Who put that up there? A. I did. Q. How did you get up? A. Well, we got the stepladder there all the time. Q. You kept a stepladder there handy? A. Well, that is the only place, you know, I could have to put it. I live on the second floor. On the first floor lives Resnick, and he occupies the basement; and I put it there, and that is the only safe place I find to put it away."

He testified that he had used none of the liquor since obtaining it, but that "just had a bottle, not very much," in his house.

The fact of finding intoxicating liquors in unusual quantities in a private dwelling house or its dependencies is "presumptive evidence that such liquors are kept for illegal sale." Sec. 2427, Code. The law does not prescribe a test or criterion by resort to which we may ascertain what quantity of intoxicating liquors is to be regarded as usual, and how much more must be added to render the quantity

"unusual." Much depends upon the character of the liquor. There may be so much of any kind, however, as to put the inquiry at rest, and we are of opinion that ten gallons of whisky is an unusual quantity to be found in a private dwelling house.

The only other inquiry is whether the accused has, by his showing, overcome the presumption of guilt which otherwise must obtain. His sole contention is that he was keeping the whisky for the use of himself, family, and wife. But how many compose his family, or whether any member thereof or his wife used whisky as a beverage, was not disclosed. Even the accused only claimed to take "a little drink." Though claiming to have kept the seized whisky for use in his family, none had been drunk for two months; and this was explained by saying he "just had a bottle, not very much." This evidence falls far short of rebutting the presumption of guilt. In the first place, the quantity exceeded many times the amount of liquor of that kind likely to be kept on hand in the home by a family making use of it as a beverage; and in the second place, Kopel's testimony does not show that he or his family so used it. Indeed, it could have been consumed by either only in exceedingly small quantities; for "a bottle, not very much," appears to have lasted more than two months. The accused utterly failed to obviate the presumption of guilt of keeping the whisky for the purpose of unlawful sale; and for this reason, he should have been found guilty of contempt, in that he violated the terms of the decree enjoining him from keeping for sale or selling intoxicating liquors on the premises. See *State v. Thompson, Judge,* 130 Iowa 227; *State v. Hale,* 91 Iowa 367, 368; *State v. Wilson,* 152 Iowa 529; *Shidler v. Keenan Bros.,* 167 Iowa 70.

We give no consideration to the evidence that Kopel had the reputation of being a bootlegger, and that the place where he lived was reputed to be a place where intoxicating

liquors were kept and sold. The trial court
2. Intoxicating     rightly ruled such evidence not admissible.
liquors:
contempt: evi-    Section 2406 of the Code Supplement, 1913,
dence: reputa-
tion of place.     authorizes the consideration of evidence of
the general reputation of a place in determ-
ining whether such a liquor nuisance exists as shall be en-
joined; but the section following, relating to prosecution of
contempts in violating injunctions issued under said Section
2406, contains no such provision; and, of course, in the ab-
sence of statute so authorizing, evidence of this kind may
not be received. It is not to be overlooked that the accused
claimed to have procured the whisky prior to the entry of the
decree, but that this was done, according to his story, after
he had quit the business of selling intoxicants in violation
of law, on May 1st, and for his personal use and that of his
family. Had he admitted having procured it for illegal dis-
position, and claimed that, as this was prevented by the de-
cree, it had remained there since, without design to sell or
use, an entirely different question would have been presented.
Undoubtedly, this was not true; else he would have so as-
serted, instead of claiming that he had purchased for use of
himself and family,—which, as we think, the evidence conclu-
sively failed to establish. In other words, the evidence ut-
terly failed to meet the presumptive evidence of guilt raised
by keeping whisky in unusual quantities in his dwelling
house; and there is no escape from the conclusion that the
accused is guilty of contempt of court, in that he violated
the injunction against keeping for unlawful sale. No mere
stage performance can obviate this result. What was said in
*Nies v. Anderson, Judge,* 179 Iowa 326, concerning the quan-
tum of proof exacted, does not conflict with this finding.
The strictures of the dissent are not warranted by this rec-
ord. The order of acquittal is annulled, and the cause re-
manded for judgment in harmony with this opinion.—*An-
nulled and remanded.*

Preston, C. J., Weaver, Evans, Gaynor, and Stevens, JJ., concur.

Salinger, J. (dissenting). Appellate tribunals must use fixed standards in determining whether a person charged is guilty or innocent. Though these standards are used, it may sometimes happen that the innocent suffer and the guilty escape. But, if our decisions are to be precedents, and their publication is to be a guide, rather than a trap, these standards must be used, and used in every case. We must not follow our decisions in one instance and disregard them in another. We must not profess to adhere to them and yet, in effect, overrule them. In my opinion, this is what the majority has done in dealing with *Nies v. Anderson, Judge,* 179 Iowa 326. The opinion says that it is not in conflict with what was said in the *Nies* case "concerning the quantum of proof exacted." Conceding for the majority absolute good faith, I still think that its opinion manifestly conflicts with the *Nies* case. In that case, after reviewing what will suffice to annul an acquittal, we said, "On the whole, we think the rule is that the review is not *de novo;*" and that the evidence, "to sustain a finding of guilty, must amount to more than the mere preponderance which sustains an ordinary recovery on the law side." I cannot escape the conclusion that the majority *is* indulging in a review *de novo,* and that, moreover, it proposes to annul an acquittal though the evidence of guilt, instead of being more than a mere preponderance, is less than a preponderance, and, at most, not more than a preponderance.

The only evidence of guilt is that eight gallons and eight quarts of whisky were found in a private dwelling, occupied by Kopel, the person charged with violation of injunction. In some cases, the finding of liquor raises an inference of fact that it is kept with intent to be sold in violation of law. But the same statute which raises this inference declares that, when the liquor is found in a private dwelling house or its dependencies, the presumption is raised only if an "unusual" quantity be found there. To be-

gin with, then, the complainant has no evidence, unless he prove by more than a preponderance, that the quantity found was an unusual one. Finding it in such quantities raises an inference of fact. Whether it be such quantity is, therefore, necessarily a pure question of fact. Since we may not review the finding of the trial court upon this question of fact, *de novo*, and since that the quantity found is an unusual one must be established by more than a preponderance, it follows that we can interfere with an acquittal only if the quantity is so large as that all reasonable minds will find it to be unusual, or there be strong evidence that, though the quantity is not so large as this, it is, in fact, an unusual quantity, under the circumstances. There is no law rule which declares that eight gallons and eight quarts is an unusual quantity, under any and all circumstances. In this case, then, the *complainant* must prove by more than a preponderance that the attendant circumstances show that what was found was more than is usual.

This situation the majority avoids in two ways: First, by simply assuming that to exist which it was the duty of the complainant to establish by more than a preponderance. This is done by statements such as:

"The quantity exceeded many times the amount of liquor of that kind likely to be kept on hand in the home by a family making use of it as a beverage."

Second, by the simple expedient of putting the shoe on the wrong foot, and holding that the complainant has proved the quantity found was an unusual quantity because Kopel has failed to prove that the quantity was a usual one. This is illustrated by the statement that "Kopel's testimony does not show that he or his family used it," and that, though he testifies it was kept to be used by the family, the failure of proof on Kopel's part effects that "the evidence conclusively fails to establish that he purchased for use of himself and family." Again, it is said "he has not disclosed the size of his family." In other words, if the defendant does not prove he is innocent, this constitutes proof of his guilt. The whole

opinion at this point is an argument that, because Kopel has failed to show this, that, or the other thing, it does not appear that the quantity found was not more than a usual quantity. As I view it, it is for the complainant to show how large the family was, and how much liquor it used or did not use, or anything else which bears upon the claim that Kopel kept on hand an unusual quantity of liquor. I am unable to agree that the failure of the complainant to adduce circumstances that prove the quantity was unusual is cured because Kopel did not show that the quantity was usual.

II. But pass all this, and assume that the quantity found was an unusual one. What have you then? Not more than if a credible witness had testified to facts which raised a presumption that Kopel was keeping this liquor in violation of law. Suppose such witness had so testified, and Kopel had then, on oath, said that he kept the liquor for the use of himself and his family. Surely, guilt would not then be established by even a preponderance, to say nothing of more than a preponderance. Kopel did so testify. The majority, which professes to adhere to the rule that it may not review *de novo*, brushes this sworn denial aside, brushes aside the conclusion of the trial judge, who heard Kopel testify, and declares, on a review professedly not *de novo*, and though more than a preponderance is required, that a sufficient quantum of evidence is adduced to justify the setting aside of the finding of the trial court. To put it in the language of the majority, that "the evidence utterly failed to meet the presumptive evidence of guilt raised by keeping whisky in unusual quantities in his dwelling house." All that it has, except the conflict between the said presumption and the denial of Kopel, is that not much of the liquor had been used. Now, if this proves that it was not intended for use, it proves just as much that it was not intended for sale. If one does not intend to use because he has not used, then he

does not intend to sell because he has not sold.

Within a month, this court has declared that, even on a review *de novo,* a finding of the trial judge will be given great weight, in dealing with a mere conflict in testimony, and with the credibility of witnesses. The majority opinion, in this case throws that declaration to the winds, and refuses to apply its doctrine and that of the *Nies* case, even where it is still conceded, in words at least, that we are not authorized to indulge in trial *de novo.*

I am most strongly persuaded that we have no right to interfere with the finding of the trial court in this case.