STATE OF IOWA, Appellee, v. JOHN BUTLER et al., Appellants.

CRIMINAL LAW: Conviction or Acquittal—Joint Defendants—
1 Form of Verdict. There is no error in submitting four forms of verdict, one for conviction and one for acquittal, for each of two defendants in a prosecution against two defendants under an indictment for illegally carrying around on their person and in a vehicle, intoxicating liquors, with intent to sell and dispose of the same, by gift or otherwise. (Secs. 5375, 5384, 5408, Code, 1897.)

TRIAL: Course and Conduct in General—Exhibiting Jugs of Liquor.
2 In a prosecution for violating the prohibition law, it was not

prejudicial error to keep before the jury jugs of liquor, without making an effort to introduce the same in evidence, where it is conceded that there would have been nothing prejudicial if the jug had been properly identified and offered in evidence in the usual course of the proceedings.

EVIDENCE: Relevancy, Materiality, and Competency—Carrying
3 Liquor in Suit Case. In a criminal prosecution for carrying around, on defendant's person and in a vehicle, liquor, with intent to sell and dispose of the same, the fact that the defendant carried four gallons of liquor in a suit case is competent evidence on the question of the intent with which the liquor was carried.

INTOXICATING LIQUORS: Criminal Prosecutions—Possession of
4 Liquor—Presumptions. In a prosecution for carrying liquors on defendant's person or in a suit case, with intent to sell and dispose of the same by gift or otherwise, the finding of liquor in a suit case carried by defendant established, *prima facie*, under Sec. 2427, Code, 1897, that the defendant kept such liquors in his possession with intent to violate the law.

EVIDENCE: Presumptions—Possession of Liquor. The presump-
5 tion of unlawful intent, created, under Sec. 2427, Code, 1897, by the finding of liquor in the possession of defendant, does not create a new rule of evidence: it merely enlarges the application of a rule of evidence; and this bare presumption is rebutted, as a matter of law, when it is established that the liquor found was intended for personal use.

INTOXICATING LIQUORS: Criminal Prosecutions—Excessive Sen-
6 tence. Evidence reviewed, in a prosecution for unlawfully keeping intoxicating liquors with intent to sell or give the same away, and *held* that a sentence of imprisonment in the county jail for 9 months, and, in addition, a fine of $200 and costs, and, in default of the payment of the fine, further imprisonment for the period of 60 days, was excessive, and should be reduced to a fine of $300, or 90 days, and the payment of costs.

*Appeal from Hamilton District Court.*—R. M. WRIGHT, Judge.

JULY 10, 1919.

THE indictment charges that John Butler and William Butler willfully, unlawfully, and feloniously kept, and car-

ried around on their persons, and in a vehicle, intoxicating liquors, with intent to sell and dispose of the same, by gift or otherwise. This is an appeal from a conviction under this indictment.—*Modified and affirmed.*

   *D. C. Chase, Jr.,* for appellants.

*H. M. Havner,* Attorney General, *B. J. Powers* and *C. G. Watkins,* Assistant Attorney Generals, and *J. E. Burnstedt,* County Attorney, for appellee.

SALINGER, J.—I. The indictment alleges that John Butler and William Butler committed the act charged. The court submitted four forms of verdict. Form 1 provided for finding John Butler guilty; Form 2 for his acquittal. Forms 3 and 4 dealt in like manner with William Butler. The jury returned a separate verdict, finding each defendant guilty as charged. In a brief point, appellants make the statement that, where the indictment charges a joint commission of the offense, "and there is a variance between the proof and the charge, there can be no conviction; and it is inconsistent that, in such a case, the forms of the verdict be several:" in effect, that, where a joint offense is charged, there can be no conviction unless the evidence proves a joint offense; wherefore the court erred in making it possible to convict one and acquit another defendant. For support, they refer to 23 Cyc. 259, and cases cited there. The first of the text cited is this:

1. CRIMINAL LAW: conviction or acquittal: joint defendants: form of verdict.

"It has been held that, upon an indictment charging two persons jointly with an unlawful sale of liquor, one of them may be convicted, although the evidence does not show any participation by the other."

Of course, this much is against the position of the appellants. But the text continues:

"According to other decisions, the evidence must show

the joint participation of the defendants in the unlawful act, or it will not warrant a conviction."

One of the two cases cited for this last statement is *State v. Matheison,* 77 Iowa 485. All ·that case holds ¦ ¦ that certain testimony is sufficient to establish the existence of ·a liquor nuisance, and to warrant its being enjoined. Whatever effect said last statement in Cyc. might have if the question were open in this jurisdiction, it can have no effect on the decision of this case under the settled law in this state. In *State v. McAninch,* 172 Iowa 96, beginning at page 106, there is this summary:

"On analysis, it will be found the great weight of authority deals with this proposition on the simple theory that two equals two times one; that an accusation that A and B committed a murder is, in logic, equivalent to asserting that A committed murder and that B did, and that, therefore, B may not escape because A proves innocent."

Some of the cases cited with approval in *State v. Mc-Aninch* are "on all fours" with the case at bar, and hold against the position of appellants. One point ruled in the *McAninch* case is that our statute law is opposed to that position. The argument for so holding is that Section 5289, Code Supplement, 1913, provides an indictment is (for present purposes) sufficient if so worded as that the court is able to pronounce judgment, according to law, upon a conviction; and that it was in contemplation of the legislature that joint charging should not interfere with ability to pronounce judgment, because, under Section 5284 of the Code, the indictment may, where, in the transaction, more than one offense has been committed, charge the several offenses, and defendant may be convicted of any offense included therein; that Section 5384 of the Code provides that "upon an indictment against several defendants, any one or more may be convicted or acquitted;" and because Section 5408 of the Code is that, "on an indictment

against several, if the jury cannot agree upon a verdict as to all, it may render a verdict as to those in regard to whom it does agree, on which a judgment shall be rendered accordingly, and the case as to the rest may be tried by another jury." And we point out in the *McAninch* case that it was held, in *State v. Hunter,* 33 Iowa 361, that, while defendants jointly indicted may, in the discretion of the court, be tried jointly or separately, a separate judgment must be entered against each, though jointly tried. We have to add that this is emphasized by Section 5375 of the Code, which provides that, on charge of a misdemeanor, "defendants jointly indicted may be tried separately or jointly, in the discretion of the court;" and that we have repeatedly held that whether such trial shall be separate is wholly within the discretion of the court. Indeed, we are of opinion that *State v. Miller,* 175 Iowa 210, holds, by irresistible implication, that it would have been error for the trial court to do what appellants insist should have been done to avoid error. In that case, the indictment was for a misdemeanor jointly committed, and the only forms of verdict submitted required the jury to find either that the defendants were guilty or were not guilty. We held this was error, because it deprived the defendants of the opportunity of having it found that some of them were guilty and others not guilty. We conclude there was no error in submitting forms of verdict as was done.

II. The next point urged is that it was grossly prejudicial to keep before the jury jugs of liquor, without making any effort to introduce the same in evidence, and this

2. TRIAL: course and conduct in general: exhibiting jugs of liquor.

was aggravated by the fact that some of the bottles and jugs were "even marked as exhibits and referred to in the testimony throughout the trial, but never offered in evidence." It is argued:

"This was a flagrant violation of the cardinal princi-

ples of evidence and procedure * * * prejudice could not but avail in the minds of the jury from continually facing a row of eight gallon glass bottles of whisky throughout the trial, and having the attention particularly directed to them, from time to time, by the testimony of the State's witnesses. As a matter of psychology, a jury could not help but be influenced by constantly seeing this much liquor displayed before them, and in the course of the day, this fact would react upon their minds to the prejudice of the defendants. If these jugs had been properly identified and offered in evidence in the usual course of procedure, appellant would not be heard to complain; but for the county attorney to gain all the suggestion and influence and prejudice from this array of bottles throughout the trial, and without introducing them as evidence, is clearly against the law and practice, and a prejudicial error of the most unfair nature."

Since appellants concede there would have been nothing prejudicial done "if these jugs had been properly identified and offered in evidence in the usual course of the procedure," we find ourselves quite unable to follow counsel to his deduction that prejudice was created by failure to make formal offer of the jugs. It is admitted the vessels in question did contain whisky. Therefore, it cannot be claimed that a formal offer in evidence, followed possibly by a test of the contents on part of the jury, would have left the State without a *corpus delicti*. We are unable to see how a formal offer of these vessels would have put the appellants in a better position than they were in because the vessels, though in sight, were not formally offered—are unable to understand in just what way psychology or anything else impaired the fairness of the trial, because of the failure to offer these liquor vessels in evidence formally. But see *Kennon v. Territory*, 5 Okla. 685 (50 Pac. 172).

III. Under the statute, the indictment here must,

*inter alia,* be supported by proof that defendant carried intoxicating liquor "around on his person or in a vehicle."

3. EVIDENCE: relevancy, materiality, and competency: carrying liquor in suit case.

Both defendants urge that the liquor they carried in their suit cases was not carried in a "vehicle." We have no occasion to decide now whether a suit case is or is not a vehicle, within the meaning of said statute. For reasons presently to be stated, either defendant could be convicted though his suit case be not such vehicle. And, aside from the reason applying to both defendants, John Butler could be convicted though he did not carry around in a vehicle, because he did carry liquor in his pocket.

IV. When it was proved that John Butler carried liquor around on his person, it was next necessary to prove that he carried it with intent to do what the statute prohibits.

4. INTOXICATING LIQUORS: criminal prosecutions: possession of liquor: presumptions.

On that question, the fact that he carried four gallons of liquor in a suit case is competent evidence, whether the suit case be or be not a vehicle, or whether carrying liquor there was or was not carrying liquor on the person. Under Section 2427 of the Code of 1897, the finding of liquor creates a presumption that same is kept with unlawful intent, and the State invokes this presumption. The defendants respond that this presumption arises only where the liquor is found in the possession of a person in a building or other stable or fixed place. We think this position misapprehends the statute. The statute creates an exception if liquor is found in one's possession, say in his private dwelling. That liquor is found in some particular fixed place will destroy the presumption, instead of being the sole method of raising it. The statute is not that the presumption shall arise *only if* the liquor be found in a stated building, but that the presumption shall arise *unless* the liquor be found in a stated building. We therefore hold that finding the liquor

in the suit case carried by John Butler established *prima facie* that he kept such liquors in his possession with intent to violate the statute under which he stands charged. It is not strained to say that, if liquor be found on the person, and a larger quantity in a suit case carried by the defendant, the presumption arises there was an intent to sell as a bootlegger. And so holding is not in conflict with *Barr v. Neel,* 151 Iowa 458. It may be conceded that, if the State had no evidence except this presumption, it alone cannot sustain a conviction, if against it there be undisputed and credible evidence that, notwithstanding such presumption, the liquor was carried for a lawful use. All concede that the presumption raised by the statute is rebuttable. See *Hathaway v. Benton,* 172 Iowa 299, and *State v. Intoxicating Liquors,* 109 Iowa 145, 147. The State concedes the presumption would be rebutted, as matter of law, by a stipulation that the liquor found was intended for personal use. Both defendants testify, without direct contradiction or impeachment, that the liquor was intended for such use only. If this testimony has nothing to weaken it, then, on the authority of *Schaefer v. Anchor Mut. F. Ins. Co.,* 133 Iowa 205, approved in *Mohn v. Mohn,* 181 Iowa 119, the defendants are entitled to an acquittal. This is sound, both in logic and on authority. The statute presumption does not create a new rule of evidence. It merely enlarges the application of a rule of evidence. It is a member of the family to which belongs the presumption that a deed found in the possession of the grantee was duly delivered about the time at which it is dated, and that an admission in pleading made by an attorney is authorized. In the *Schaefer* case, we held that both these presumptions are overcome, as matter of law, if, against the presumption, it is shown, without dispute or impeachment, that the deed was not handed over until after the decease of the grantor, and that the admission of its delivery made in the pleadings

was unauthorized, and made under a mistake of fact. We say that the presumption for the time the deed was delivered, and for the authority as to making admissions in pleading, is "a mere presumption," and "that, in view of the affirmative evidence," it may not be said "the naked presumption raised any conflict which should have been submitted to the jury." Logic supports authority in this respect. There can be no conflict between two things if both may be true, and if neither contender denies what the other asserts. The one who asserts the presumption as evidence does not claim that what should be presumed did, in fact, happen. He merely asserts that it happens so very often that it may be deemed to have happened in a particular instance, unless the contrary is made to appear. The other party does not deny that the thing in question does usually happen, and may be assumed to have happened in the particular case, but asserts that, in fact, it did not happen in that case. There is no claim in rebuttal that the particular thing did, in fact, happen. From all this it follows that, if the State had nothing but the presumption, or rather, if the avoidance of the presumption had no flaw, the indictment must fail. The question then resolves itself into whether it may be said that the avoidance is so strong as that the presumption is overcome as matter of law. It is true, both defendants testify that they had the liquor for a lawful purpose, and true that no witness disputes this statement. But is there nothing to weaken it, and thus to give additional force to the statute presumption? John Butler not only carried his small flask in his pocket, but at the same time carried four gallons of whisky in his suit case. He testifies he always used liquors since he was eighteen, and even earlier. But when asked to what extent he had used whisky, he responded that he took a drink whenever he felt like he needed one; that that was the

5. EVIDENCE: presumptions: possession of liquor.

way he took it; that very often when he was out in pretty cold weather it came pretty handy, while he was in the water digging wells. He says he does not know whether he can be called addicted to the use of liquor, or to be merely a person who just used it; that, to a certainty, he never "used it to any extent;" that he took a drink whenever he felt like taking one; that he could quit and could let it alone; that he took two or three drinks on some days and not any on some days; and that he would not, at times, take a drink even though he had the liquor, and merely because he didn't feel like taking a drink. Under this evidence, the jury could well find, in aid of the statute presumption, that the amount of liquor carried by such a drinker negatived the idea that the same was being carried purely for his personal use.

Again, not only did John Butler carry four gallons of liquor in his suit case, but with him was his cousin and codefendant, who carried three gallons in his suit case. If the two had been maintaining separate establishments, it could well be responded that the liquor carried by William Butler should not be treated as a circumstance against John Butler. But it appears that the two men lived together, and had done so for a number of years. So the jury could find that, for all practical purposes, John Butler was to have access to the seven gallons carried by the two.

Again, as one witness puts it, it required quite a bit of force to search John Butler. The sheriff testifies that resistance was made to the state agent and submission was refused, because defendants claimed they did not know that the state agent was such officer, or any officer. Be that as it may, the sheriff testifies further that, when the defendants were brought into the jail, and it was desired to search, opposition was then made, though the defendants knew the sheriff,—this time, on the ground that the officer did not

have a search warrant; and he says that they had quite a tussle there.

V. Although no liquor was found in the possession of William Butler except the three gallons of whisky that he carried in his suit case, much that has been said concerning John Butler's case applies to the case of William Butler. He was traveling in company with a man who was carrying liquor in his pocket, and carrying four gallons in a suit case. William himself was carrying three gallons in a suit case. That made seven gallons to go into the same household. William testifies that he is 35 years old, and has been a consistent user of liquor since he was something like 18 years old. He also testifies that he has refused liquor; that he frequently passes it up entirely; and that he does not use it every day. He joined in some of the resistance to search made by his codefendant. We are constrained to hold that, under the rules which govern appellate review of verdicts even in criminal cases, that the avoidance made by the defendants is not irrefragable, and does not overcome the statute presumption, as matter of law.

The question whether William may be found jointly guilty with his codefendant is not involved. The State has contended, and we have herein held, that the indictment charges each defendant severally.

Though, as has been said, it was not essential, to convict either, that joint guilt should be found, and that it was proper to submit separate verdicts, and that one might be found guilty and the other innocent, this does not in the least obviate that either might be found guilty because, though he did not act independently, he yet participated in the guilty acts of his codefendant.

The writer is not minded to recede from the position he has repeatedly taken in cases decided here: that it is not for this court to say, where the trial judge has refused

to punish for contempt, that his finding should be set aside because this court believes the amount of liquor found was excessive. See dissent in *McMillan v. Anderson*, 183 Iowa 873, for one. But that is not the question here. The present decision is that the jury can, on appellate review, be sustained in finding that the quantity of liquor found was so large as to raise a presumption that unlawful sale was intended.

VI. Nothing in this record indicates that, prior to this conviction, the defendants were not of good repute, good character, and guilty of no crime. While we have been constrained to hold that, by indulging certain statute presumptions, there is enough to sustain a conviction, under the strict rules governing appellate review of verdicts, the fact remains there is no evidence that either defendant in fact ever sold or attempted to sell, or gave or attempted to give, one drop of liquor. The penalty imposed by the court is that each be imprisoned in the county jail for 9 months, and, in addition, pay a fine of $200 and costs; and that, in default of the payment of said fine, each be, in addition to said imprisonment, imprisoned for a period not exceeding 60 days; and that the last-mentioned imprisonment shall start at once on the expiration of the above-mentioned 9 months' imprisonment. We are constrained to hold, both on reason and authority, that this punishment is excessive. See *State v. Fountain*, 183 Iowa 1159. It is our judgment that the sentence should be, and it is hereby ordered that it be, reduced to the payment by each defendant of a fine of $300, or 90 days, and the payment of the costs of the trial below, each defendant to be committed to the jail of the county until such fine and costs are paid. -*Modified and affirmed.*

All the justices concur.

6. INTOXICATING LIQUORS: criminal prosecutions: excessive sentence.