STATE OF IOWA, Appellee, v. H. A. WITTY, Appellant, et al., Appellee.

INTOXICATING LIQUORS: Other Sales as Evidence. On the trial
1 of an indictment for keeping intoxicating liquors for unlawful sale, evidence of defendant's connection with *other* sales of liquors, about the time of the transaction on trial, is admissible, as bearing on the intent and purpose of the defendant.

INTOXICATING LIQUORS: Presumption from Undue Quantity.
2 The finding of 13 gallons of whisky in a private residence may well justify the jury (under the record) in finding that the same was kept for unlawful sale.

INTOXICATING LIQUORS: Jury Question as to Unlawful Intent.
3 Evidence held to sustain a verdict of guilt of keeping intoxicating liquors for unlawful sale, even though no actual sale was proven.

INTOXICATING LIQUORS: Unusual Quantity. Record reviewed,
4 and held insufficient to justify the court in holding that defendant had, as a matter of law, overcome the presumption arising from finding 13 gallons of whisky in his private residence.

*Appeal from Clarke District Court.*—P. C. WINTER, Judge.

OCTOBER 19, 1920.

DEFENDANT H. A. Witty and his brother, Oliver Witty, were indicted, accused of the crime of nuisance, in that they kept intoxicating liquor in the house where they dwelt, and used such dwelling house for the purpose of

there selling intoxicating liquor, and were tried. Oliver Witty was acquitted, by direction of the court. Defendant H. A. Witty was convicted, and fine of $300 imposed. Defendant H. A. Witty appeals.—*Affirmed.*

*O. M. Slaymaker,* for appellant.

*H. M. Havner,* Attorney General, and *J. B. Dyer,* County Attorney, for appellee.

ARTHUR, J.—A conversation occurred in the road in front of Morgan's house on the Sunday before July 4, 1919, in which the defendant H. A. Witty, and James Morgan, and a man whom defendant was with, talked, about which the defendant H. A. Witty and James Morgan have different versions of just what was said. While different conclusions and inferences may be drawn from the other testimony, there is very little dispute in the facts.

1. INTOXICATING LIQUORS: other sales as evidence.

Defendants, H. A. Witty and Oliver Witty, are brothers. H. A. Witty was a bachelor, 36 years old at the time of the trial, and lived on a rented farm, 4½ miles from the town of Murray, in Clarke County. Oliver Witty and his wife lived with him, in the same house, and worked for him. H. A. Witty has been engaged in farming for the last 14 years, and before that he was a coal miner. On September 11, 1919, the Witty house was searched by the deputy sheriff, and there were found and seized 12 gallons and 3 quarts, lacking one-half pint, of whisky. The whisky was in 116 bottles: 53 half pints, 51 pints, and 12 quarts. About half of the whisky was found upstairs in a small bedroom, and the other half in the cellar. The whisky belonged to H. A. Witty. He had bought the liquor in St. Joe, the latter part of June. No empty bottles were about the premises.

James Morgan, witness for the State, testified that, on the Sunday before the 4th of July, H. A. Witty and some other man in an automobile stopped in the road in front

of his house, and one of them called for him to come down, and he went down to the road where they were, and H. A. Witty asked him if he wanted to buy some whisky, and said to Morgan that he expected he could buy a couple of pints of liquor; and Morgan bought two pints of whisky from the man who was with Witty in the automobile.

H. A. Witty, as a witness for himself, gives a slightly different version of the conversation in the road. First, he explains how he happened to be with this man in the automobile,—says that he was traveling along the road on an errand, and this man drove along in an automobile, and asked him to get in and ride; that the man was a party he knew in Des Moines; that he guesses his name is Jones, but is not sure; that Jones told him he had a couple of pints of whisky to sell; that Jones offered him a drink, but he refused; that they stopped in the road in front of Morgan's house; that he told the man that he did not know whether Morgan would want to buy some whisky or not. He says:

"I told Jones to call Morgan out, and if he wanted to buy it from him, he would buy it. Morgan's place is four or five miles from mine."

He also testified that he had been engaged in farming for the last 14 years; that before that he was a coal miner; that, when he quit coal mining and went to farming, some Des Moines doctor, whose name he had forgotten, told him to use liquor for trouble he had with his lungs and stomach; that he used whisky purely as a medicine; that he was brought up to use liquor; always kept liquor, and used from a half pint to a pint a week; that his brother Oliver used about the same; that Oliver's wife took a drink now and then, but she drank wine. He said:

"I bought the liquor the latter part of June, probably 10 days before the 4th of July. I went to St. Joe myself, and I brought back 100 pints of whisky and 5 quarts of wine; and as to how much I used before the 11th day of September, the day that Mr. Tillotson was there, I had a few pints before Mr. Tillotson came out there, and before

I went to St. Joe, I sent to Minneapolis after my whisky. I would buy it once every 2 or 3 months,—maybe once every 6 weeks,—and I used it purely as a medicine: I am not very stout. I suppose the particular ailment I am using this whisky for is my stomach,—I don't know; and as to my still acting under the advice of the Des Moines doctor, I am not really acting under the advice of anybody now; and as to how I came to know that Jones had the whisky, that he had a couple of pints to sell, he told me he had. As to my thinking Morgan would want it, I didn't know whether Jim would want it or not. I didn't ask him whether he wanted to buy it. I didn't tell Jones to ask him; I told Jones to call that fellow out, and if he wanted to buy it from him, he would buy it."

He says that he never kept any liquor for sale, and never sold any.

Oliver Witty testified that he and his wife worked for his brother, H. A. Witty, and had nothing to do with renting the premises; that his brother was sickly when he left the mines, and the doctors told him to use some liquor; that was 14 years ago; that liquor was always used in their father's home; that his wife liked a drink once in a while; that he never sold any liquor, and never knew his brother to sell any; that his brother does not buy liquor for him— he buys his own liquor; that he has bought whisky, five gallons at a time; that, if he wanted liquor, he bought it for himself; that they both bought liquor, and, when one was out, he used the other's liquor; that the liquor seized was the largest quantity bought at any one time; that, before, they had only bought 5 or 6 gallons at a time.

Mrs. Oliver Witty testified that she used liquor, that:

"I have my hot toddy every morning, and I would this morning, if I had it. I have not had any since they took it away. I expect I will die with the flu this winter."

She testified that the sheriff took every bit but four bottles of wine, which he left for her; that no liquor was given away or sold on the place; that the reason they got this amount at the time it was gotten was "that the state

was going to go dry, and we knowed we couldn't get any;" that the whisky was kept, part of it upstairs, and part of it down in the cellar, because they didn't want to run down cellar every time they wanted a drink.

Arl Jeffries, J. R. Corneilison, Albert Duggatt, and W. L. Blood, witnesses for defendant, testified that they were neighbors, and were at the Witty premises frequently, and had never seen any liquor sold there, or anything to indicate that there was liquor sold there.

At the close of the evidence, a verdict of acquittal was directed in favor of the defendant Oliver Witty. A motion by defendant to withdraw testimony of James Morgan from the jury was overruled. A motion by defendant to direct a verdict in favor of H. A. Witty was overruled. The case was submitted to the jury as to H. A. Witty.

Five assignments of error are directed to rulings and instructions as to the testimony of James Morgan, who testified to a conversation with defendant and the occurrence in the road in front of Morgan's house on the Sunday before the fourth of July.

We find no error. The Morgan testimony was competent, as bearing on intent,—as a circumstance tending to show defendant's attitude with respect to the sale of liquor. To say the least, the conversation, either as related by Morgan or Witty, shows that the defendant was instrumental in making the sale of two pints of whisky to Morgan, although it was not the defendant's whisky that was sold to Morgan, and it is not claimed that he made the sale. The court cautioned the jury not to consider the testimony, so far as the sale was concerned, but the fact that the conversation was had, and the conversation, were admitted in evidence. It was not defendant's whisky that Morgan bought, and defendant did not sell it. The other man sold it, and got the money for it. However, defendant's own testimony shows that he discovered Morgan, the purchaser. Jones did not know Morgan. Morgan says that, when he came down to the road, Witty asked him if he wanted to buy some whisky. Only a few days before this Morgan

conversation, defendant had brought from St. Joe, he says, 100 pints of whisky. The testimony of Morgan was competent, as bearing on defendant's intention with reference to his disposition of the liquor that he had recently purchased, to be considered with other facts and circumstances shown in evidence. It was competent, although the conversation occurred some 4 or 5 miles from the home of Witty.

Counsel for defendant insists that nearly 13 gallons of whisky, found in the private dwelling house of the defendant, is not an unusual quantity; therefore, no presumption attaches to its intended use. Considerably

2. INTOXICATING LIQUORS: presumption from undue quantity.

smaller quantities of liquor than found with defendant have been held to be unusual quantities to be found in a private dwelling house. *McMillan v. Anderson*, 183 Iowa 873; *State v. Butler*, 186 Iowa 1247. What might be considered an unusual quantity for one man to have in his private dwelling would not be considered an unusual quantity for some other man to have. What constitutes an unusual quantity of intoxicating liquor, in any case, is a question of fact for the jury. If it is conceded that a quantity of liquor kept in a dwelling house is there for private use, then it does not matter about the quantity, nor the presumption that might otherwise arise from the quantity; for the intention is conceded to be not unlawful. Witty had not bought so large an invoice of whisky in former purchases; he had been in the habit of buying only 5 or 6 gallons at a time before; and his explanation for buying so large an amount in the last days of June, 1919, was that the eighteenth amendment would go into effect on July 1st.

It is argued that 13 gallons of whisky is not an unusual amount for a man to supply himself with, and have in his private dwelling, with, perhaps, a long dry spell ahead of him. If that is sound logic, then Witty and all other men, and women, too, would have been legally justified, in the last days of June, 1919, in consulting a mortality table, and ascertaining their expectancies of life, and laying in a stock sufficient to last through their lives. If this course had

been pursued by everyone, the beneficent results of prohibition would not be realized for at least a generation yet. As July 1, 1919, drew near, there was a great temptation to men whose morals with respect to handling liquor were lax, to lay in a stock and sell it at an exorbitant price.

It is strenuously insisted by counsel that the evidence was not sufficient to warrant the submission of the case to the jury, and that it was error to overrule motion to direct a verdict for defendant; and it is insisted that, even if the testimony, considered with the statutory presumption, is sufficient to warrant the finding of an unusual quantity, in such event the testimony offered by defendant in explanation and avoidance is sufficient to overcome the statutory presumption, and, no actual sale having been proven, that it was the duty of the court, on such a record, not to submit the case, but to find, as a matter of law, that the showing of avoidance was sufficient to overcome the presumption, and to direct a verdict for the defendant. We think the testimony offered by the State was sufficient to warrant the submission of the case to the jury, and that it was not error to refuse to direct a verdict. *State v. Butler*, 186 Iowa 1247.

After examining the testimony offered by defendant, we conclude that defendant's explanation of buying and having in his house nearly 13 gallons of whisky, in 116 containers, was not sufficient to warrant the court in holding, as a matter of law, that the statutory presumption of unusual quantity was overcome. We think that, at the close of all the testimony, the case for the State was stronger than at the close of the State's testimony, owing to the weaknesses in the defendant's attempted explanation and avoidance. Defendant's avoidance seems to be based on his keeping the whisky for his own use for medical purposes. He received his medical advice to use liquor for stomach and lung trouble about 14 years before, from some Des Moines doctor whose name and residence he does not

3. INTOXICATING LIQUORS: jury question as to unlawful intent.

4. INTOXICATING LIQUORS: unusual quantity.

now recall. But, in his testimony later, defendant says:

"As to my still acting under the advice of a Des Moines doctor, I am not really acting under the advice of anybody now."

Other assignments of error are directed to instructions involving questions that we have not discussed, but which we have examined carefully, and in which we find no error.

It was not error to submit the case to the jury, and the case was properly submitted to the jury.

There is no reason to disturb the verdict and judgment. —*Affirmed.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.