C. N. McMILLAN, Appellant, v. E. M. SUMNER, Appellee.

**INTOXICATING LIQUORS:** Injunction—Unusual Quantity in Private Dwelling. The finding of 120 pint bottles of beer in cases in a private dwelling, with a machine for capping such bottles, along with testimony that the accused *had* not sold any liquor, but with no denial of intent to sell, and no showing whether the accused himself used such liquor, or the extent of his family, if they used it, is sufficient to demand the issuance of an injunction.

*Appeal from Woodbury District Court.*—GEORGE JEPSON, Judge.

FEBRUARY 15, 1921.

ACTION in equity, wherein the plaintiff seeks a temporary injunction, restraining the defendant from maintaining a liquor nuisance. Plaintiff's application was dismissed, and he appeals. —*Reversed.*

*John F. Joseph,* for appellant.

*George H. Bliven,* for appellee.

FAVILLE, J.—Plaintiff brought this action in equity, alleging that the defendant occupied a certain building in Sioux City, Iowa, as a place for the selling and keeping for sale of intoxicating liquors in violation of law. A temporary injunction was prayed, in the usual form in such cases. The defendant appeared and filed answer denying the allegations of the plaintiff's petition, and denying specifically that he had ever kept or sold intoxicating liquors in said place in violation of law.

The undisputed evidence shows that the place occupied by the defendant was raided by certain officers of Sioux City on April 19, 1920, at about half past 11 o'clock in the evening, and that the police found 120 pints of beer and a 20-gallon jar, that had a small amount of beer in the bottom of it. The beer was in pint bottles that had been capped, and there was found a machine that was used to cap the bottles. The beer was found in four cases, piled up on the floor in the kitchen. It was in a two-story dwelling house. Upon analysis by a chemist, the beer was found to contain 3.07 per cent of alcohol by volume and 2.44 per cent of alcohol by weight.

The court refused to grant a temporary injunction, and the cause comes to this court on an appeal from such ruling. The case is in equity, and triable *de novo* here. For reversal of the action of the lower court, the appellant relies largely upon the provision of Section 2427 of the Code, as amended by Chapter 323 of the Acts of the Thirty-seventh General Assembly. The part of said section, as amended, material to this inquiry provides, in effect, that the finding of intoxicating liquors "in unusual quantities in a private dwelling house or its dependencies shall be presumptive evidence that such liquors are kept for illegal sale."

We have had this statute under consideration in a number of cases. No hard or fast rule can be adopted by which to determine just what is such an unusual quantity of intoxicating liquors, when found in a private dwelling house, as will be presumptive evidence that such liquors are kept for illegal sale. Perhaps some consideration should be given to the particular kind of intoxicating liquor that is found. The presumption created by the statute is a rebuttable presumption, which may be overcome by competent and sufficient proof; but, in determining the ultimate question as to whether or not an injunction should be granted, the court is by no means limited to the presumption that arises from the possession of the quantity of liquor, but may consider any other competent and proper evidence bearing upon the question of the purpose for which the liquor was kept.

In the instant case, the possession of some 15 gallons of beer, put up in pint bottles, properly capped with a machine provided for that purpose, and put away in cases convenient for handling, has some significance on the question involved, aside from the mere fact of the quantity found. To say the least, the liquor was bottled and placed in cases in a manner quite as convenient for purposes of sale as it would be for storage for private consumption. The defendant testified that "it was much easier to handle the liquor in cases," and that he made this liquor, filled the bottles, capped the same, and put it away in the cases. He denied that he *had* sold any liquor. This was as far as his evidence went, in respect to this matter, until, upon cross-examination, the following question and answer were given:

"Q. You expected there would be a little alcohol in this? A. I expected just this. I was making it for my own use, and I thought it wouldn't make any difference, so long as I was making it for my own use. I didn't make any effort to find out how much alcohol there was in it."

Aside from this statement in answer to this question, there is no explanation whatever by the defendant of his purpose or intent respecting this liquor, except his denial that he had sold any.

A son of the defendant's, who was offered as a witness, testified:

"What beer there was made, was made for our own consumption out there. It was not kept on the premises for sale, and was not sold."

There is also some evidence that the place had a general reputation as being a place where intoxicating liquors were sold and kept for sale. Such evidence should be considered in actions of this kind, under Code Section 2406 of the Code Supplement, 1913.

The defendant offered no testimony whatever that he drank beer, except the statement brought out on cross-examination, as above set forth. The statement of the son that the beer "was made for our own consumption out there" is not very enlightening. How many persons were referred to by the use of the word "our" is unexplained. Whether or not the son drank beer, and if so, how much was required for his use, is not referred to in the evidence.

What were the defendant's habits as to drinking beer was not disclosed. If he drank, the amount he regarded as essential for his consumption for any given length of time is without any explanation. The failure to fully explain these matters, knowledge of which was peculiarly within the possession of the defendant, and not available to the plaintiff, is of significance in a case of this character.

The quantity of liquor found, the size of the bottles in which it was placed, the manner in which it was kept for convenience in handling, the presence of a machine with which to cap the bottles, the fact that the defendant denied only that liquor had been sold, without a denial of intent to sell, the failure to prove the habits of defendant or his family with regard to the use of beer, or the quantity used or required, if such habits existed, and the evidence of the general reputation of the place, as being one where intoxicating liquors were sold, are some of the significant things disclosed by the record, bearing upon the question of whether or not an injunction should have been granted.

No doubtful question of law is involved. It is essentially a fact question as to whether or not, under all the facts and circumstances shown, the trial court should have issued the temporary injunction prayed for. As bearing on the question, see

*McMillan v. Anderson,* 183 Iowa 873; *McMillan v. Tarashansky,* 184 Iowa 966; *McMillan v. Miller,* 188 Iowa 264.

We think, upon the entire record, that the court was in error in the conclusion reached, and that an injunction should be ordered. The cause is, therefore, reversed, with instructions to the lower court to order a writ of injunction to issue, as prayed in plaintiff's petition.—*Reversed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.