C. N. McMILLAN, Plaintiff v. W. G. SEARS, Judge, Respondent.

**INTOXICATING LIQUORS:** Contempt—Evidence. Evidence on certiorari reviewed, and held ample to justify conviction for contempt, notwithstanding negative testimony to the contrary.

*Certiorari to Woodbury District Court.*—W. G. SEARS, Judge.

FEBRUARY 16, 1921.

A WRIT of certiorari was issued on application of the plaintiff, to which return was duly made and a hearing had, and the record is before us for review.—*Writ sustained.*

*John F. Joseph,* for plaintiff.

*George G. Yeaman,* for respondent.

FAVILLE, J.—On or about the 24th day of February, 1916, a decree of permanent injunction was isued in the district court of Woodbury County, Iowa, enjoining one Flora Jones (who, it appears, is known under several aliases) from maintaining a liquor nuisance on certain premises in Sioux City, Iowa. A writ of injunction was duly served on the defendant in said action. Thereafter, an information of contempt was duly filed in said cause, accusing the defendant in said action of violating the said writ of injunction, and a hearing was had before the respondent, as judge of the fourth judicial district of Iowa, and at said hearing an order was entered, dismissing said contempt proceeding.

A writ of certiorari brings the matter before this court for review. The sole question for our consideration is whether or not, under the record in the case, the respondent in said con-

tempt proceeding should be punished as for contempt for violation of said injunction.

For convenience, the defendant in the said injunction proceeding will be referred to in this opinion as the "defendant."

It appears from the evidence in the case that the said defendant lived at 411 Iowa Street, Sioux City, Iowa. One Brooks testified in the contempt proceeding that, at a time after the writ of injunction had been served, he had been at her place several times, and had bought intoxicating liquors there from the defendant and her partner; that the said liquor was whisky, and that he paid 75 cents a drink therefor; that one McGrath was with him, a certain day, and that the two of them bought about $70 worth of whisky by the drink, at about an ounce a drink. The witness also testified that he had bought whisky there at other times, probably as many as 10 times; that, each time he was there, he bought whisky by the drink, sometimes for 50 cents and sometimes for 75 cents; and that he had seen others buy whisky there.

The witness McGrath testified that he knew the said defendant, and had been at her place four or five times in the month of January, 1920, for the purpose of buying intoxicating liquors, and that he had bought intoxicating liquors there from the defendant and her partner by the drink, at 50 cents a drink, and at 75 cents a drink; that he had spent about $30 for liquor; that it was served in ounce glasses, and the last time he was there it was served out of a quart bottle. He said that part of the liquor was bought from the defendant and part from her partner.

The defendant offered a witness who lived at her place. He testified that, on the particular night in question, in January, he saw the witnesses Brooks and McGrath at defendant's house; that they were in a room across the hall from where he was, and he did not see them drink any liquor; that he was not in the room where these men were. Another witness testified that he lived at the defendant's house, and saw the witnesses Brooks and McGrath there, but did not see any liquor sold, and did not see any around the place. He says he did not see the witnesses Brooks and McGrath until about 9:30 o'clock, as they were going out; that he was in the sitting room, and not

in the room where the witnesses Brooks and McGrath had been. Another witness testified that he was at the defendant's rooming house on the date in question, and saw Brooks and McGrath there, and did not see any liquor. The defendant denied that she had sold the liquor.

All·the witnesses agree that Brooks and McGrath were at the defendant's place on Iowa Street on January 7, 1920, and that there was a drunken row, some fighting, and that both Brooks and McGrath were under the influence of liquor. There is evidence that there was some altercation over some money, and that a gun was exposed. The defendant testified that she had Brooks and McGrath arrested on the charge of robbery for what happened at her place that night. The whole record satisfies us that there was a drunken brawl at the rooming house operated by the defendant, on the particular night in controversy. It is quite evident that the witnesses Brooks and McGrath were more or less intoxicated during the time they were at the defendant's house, and that they had obtained intoxicating liq-·uor from some source. Their direct and positive evidence of the purchase of liquor from the defendant and her partner, Adams, at defendant's home that night is, however, scarcely met by the testimony of other roomers at the place, who were across the hall, or in different parts of the house, in other rooms. They could truthfully say that they did not see any liquor sold to Brooks and McGrath without in any way impeaching the testimony of these witnesses that they purchased and paid for liquor in the room which they occupied. A considerable amount of testimony in the case was offered in regard to the brawl or fight that occurred at the rooming house of defendant on the night in question, and also in respect to the character of the various parties involved, with details as to their past history and many suggestions respecting their general character for immorality. There seems to have been a rivalry as to which party could prove that the other had the more unsavory reputation. A very large amount of this testimony had little bearing on the question involved in this case, which is solely whether or not the defendant had violated the writ of injunction issued against her, and was guilty of selling intoxicating liquor.

We have read the entire record with care, and cannot escape

the conclusion that the evidence clearly and satisfactorily establishes the fact that the defendant was guilty of selling intoxicating liquors at the place occupied by her. The preponderance of the evidence, in our judgment, is clearly to this effect, and is not overcome by the negative testimony of witnesses who say that they did not see liquor sold, but were not in a position to know whether it was, in fact, sold or not. The evidence is chiefly limited to the transactions of the night of January 7, 1920, but there is evidence of other sales. The evidence shows that the liquor was bought both from the defendant and from her partner, one Roy Adams. Brooks testified that, on the night in question, most of it was bought from Adams. Adams was not offered as a witness, and no denial was made of this testimony, and no explanation made of the failure to produce this witness. Defendant would be liable for contempt if her partner sold liquor in her place of business, under the terms of the injunction, at least if done with her knowledge.

We have not attempted to set out the entire record in the case, but we are satisfied therefrom that the defendant had violated the terms of the injunction, and should be punished for contempt. The case presents no question of law that has not already been passed upon by this court. See *Sawyer v. Hutchinson*, 148 Iowa 449; *Wells v. District Court*, 126 Iowa 340; *Barber v. Brennan*, 140 Iowa 678; *State v. Wilson*, 152 Iowa 529; *State v. Thompson*, 130 Iowa 227; *McMillan v. Anderson*, 183 Iowa 873.

It follows that the order of acquittal entered by the trial judge must be annulled, and the cause remanded for judgment in harmony with this opinion.—*Annulled and remanded.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.